Scileppi, J.
These three companion cases under section 331 of the Election Law, arise out of and challenge the recent amendments to section 151 of the Election Law.
In Palla v. Suffolk County Bd. of Elections, the petitioners, 64 students at the State University at Stony Brook, were denied registration by the Suffolk County Board of Elections on the ground that residence in a university dormitory did not qualify them to vote under sections 150 and 151 of the Election Law. Special Term, on the basis of questionnaires in a form directed in a prior proceeding (Blumenthal v. Suffolk County Bd. of *43 Elections, [memorandum, Ritchie, J]), found that these petitioners were subjected to a special, more extensive line of inquiry than would normally be the case with nonstudent applicants for registration, and that residency was established by the petitioners, other than those who indicated recent registration in other districts. The Appellate Division reversed- and held that the issue of the bona fide change in residence could not be determined on the basis of the propounded questionnaires but required a determination only after the court “ has heard proof which contemplates the swearing of witnesses and recording of their testimony ” (38 A D 2d 84, 88). Accordingly, the matter was remanded^ for proceedings in accordance with the opinion.
In Bell, five of the nine named petitioners, were registered to vote between May and October, 1971 by the Oneida County Board of Elections; the remaining four, also students at colleges in Oneida County, were refused the right to register by local election officials. Those who had previously been registered were notified by mail by the respective Commissioners of Elections that their right to vote would be challenged on Election Day or that their registrations would be voided because of their residence at college dormitories. The proceeding under section 331 of the Election Law, seeking to enjoin those challenges and, in the case of those who were denied registration, to annul that determination and compel registration, followed.
The proceedings in Bell were consolidated with a class action on behalf of students at Syracuse University, also pursuant to section 331, seeking declaratory relief and an order compelling respondents, the Onondaga County Board of Elections, to register the petitioners and those similarly situated (Gorenberg v. Onondaga County Bd. of Elections), Special Term, upon consolidation, treated both actions as class actions to test the constitutionality of amended section 151 of the Election Law, held the statute constitutional and dismissed the petition.. On appeal, the Appellate Division, Fourth Department, affirmed, one Justice dissenting (38 A D 2d 145).
The petitioners in each case have been summarily denied the right to register for the November, 1971 general election because they were residenced at their respective colleges or *44 universities; or, where they had been afforded that right (five of the named petitioners in Bell) prior to the passage of the new amendments to section 151 of the Election Law (L. 1971, ch. 1096), were notified that their right to vote would be voided or challenged on Election Day. Contesting that action, and challenging the validity of its purported source, these proceedings, as well as related class actions in Federal courts (Gutwill v. Rockefeller, EDNY No. 71 Civ. 964; Ramey v. Rockefeller, EDNY No. 71 Civ. 1282)[1] seeking declaratory judgments aid alternative relief were commenced.
In Palla, a sequel to an earlier proceeding against the Suffolk County Board of Elections (Blumenthal v. Suffolk County Bd. of Elections, [memorandum, Ritchie, J.]), the petitioners have again been denied registration, but now on the basis of sworn affidavits and seek relief by way of a supplemental proceeding challenging that determination and contesting the constitutional validity of section 151 of the Election Law. Despite the, broad allegations of constitutional invalidity and discrimination, the Appellate Division refused to reach the broader question posed, ruling only that the propriety of the board’s action in denying registration should be. determined after a hearing and not on the basis of a questionnaire, whatever its source (38 A D 2d 84).
Residence is a necessary prerequisite to voting and the procedures for challenging a prospective registrant on the basis of residence are carefully prescribed by section 171 of the Election Law. These procedures contemplate the use of sworn affidavits, set forth as challenge affidavits in section 171, are calculated to provide details generally necessary to informed board deliberations and are to be followed. Where the sworn answers satisfy a majority of the board of the applicant’s right to be registered, they shall register the name ás a voter; if not, they are required to point out to the applicant the qualifications which he lacks as a voter. In either event, provisions for a form of expedited judicial review of board determinations are set forth in section 331 of the Election Law.
*45 Undeniably, the challenge affidavit may be augmented by the use of any reliable device, calculated to further informed board deliberations. And, in view of the criterion included in the amended version of section 151, a line of inquiry such as that initiated by the questionnaires adopted in Palla was authorized. Nevertheless, the function of such questionnaires would properly be confined to augmenting the challenge affidavit, not usurping its role. Though even technical deviations from the statutory procedure' are not to be casually brushed aside, it is apparent that questions propounded in the questionnaire constituted substantial compliance with the statutory procedures, and no rights have been prejudiced by the use of the substituted questionnaire. Since the fact of residence is properly a subject of detailed inquiry (see infra), the issues of fact raised by the affidavits, as well as the inferences to be drawn, should be determined only after the court has heard proof (Election Law, § 335) which contemplates “ the swearing of witnesses and the recording of their testimony ” (Matter of Neal v. Inspectors of Election, 286 App. Div. 1114, 1115). We, therefore, affirm the order appealed from in Palla v. Suffolk County Bd. of Elections.
In Bell and Gorenberg, on the other hand, the courts below, despite a clear challenge to the summary action of the respective boards in refusing to register petitioners, elected to treat the proceedings, as applications for declaratory relief and, as an incident of their action in upholding the statutory scheme dismissed the petitions. All named petitioners, however, have alleged summary rejection and by these proceedings have sought relief under section 331 of the Election Law. True, the named petitioners in Gorenberg also purport to represent the interests of all similarly situated, and certain of the petitioners in Bell have sought only to enjoin threatened election day challenges[2]. Yet, even proceeding as they have, the appearing petitioners *46 should not be deemed to have forsaken the particularized inquiry contemplated by the Election Law. Their petition in both instances includes a demand for judicial review of an administrative act as well as a prayer for declaratory relief; and on that basis alone the board’s determination should have been annulled and the petitioners afforded an opportunity to establish residence. Hence, the matter should be remanded to the Boards of Elections of Oneida and Onondaga Counties for proceedings de nova in conformance with the procedures prescribed by the Election Law.
The gist of these proceedings, however, resides in the varied-challenges leveled against section 151 of the Election Law. Reduced to its simplest form, petitioners argue that the statutory scheme, on its face and in its application is violative of the due process and equal protection clauses of the Fourteenth Amendment, violates the Voting Rights Act (U. S. Code, tit. 42, § 1971) and, contrary to the Twenty-Sixth Amendment, abridges the 18-year-old vote. Examined in the context of the arguments advanced, the statutory scheme does not run afoul of recited constitutional strictures, but represents, at most, merely a permissible effort to insure that all applicants for the vote actually fulfill the traditional requirements of bona fide residence.
Petitioners do not contest, nor do they purport to contest this State’s power to restrict the franchise to bona fide residents of relevant political subdivisions (Election Law, § 150; see, also, Dunn v. Blumstein, 405 U. S. 330; Evans v. Cornman, 398 U. S. 419; Kramer v. Union School Dist., 395 U. S. 621; Lassiter v. Northampton Election Bd., 360 U. S. 45, 50; Carrington v. Rash, 380 U. S. 89; Pope v. Williams, 193 U. S. 621), for all save national elections for presidential and vice-presidential electors (Voting Rights Act, Amendments of 1970, § 202, 84 U. S. Stat. 316; Oregon v. Mitchell, 400 U. S. 112). Their quarrel, instead, is with section 151, and inferentially its constitutional progenitor, its “ standards, practices, procedures and presumptions.”
That statute, insofar as relevant, provides that for “ the purpose of registering and voting no person shall be deemed to have gained or lost a residence [as defined in subdivision (b)] by reason of his presence or absence ‘ * * * while a student of any institution of learning [see, also, N. Y. Const., art. II, *47 § 4]; * * * [and that a]ny person applying for registration who claims to [be a student] shall file with the board * * * a written statement showing where he actually resides and where he claims to be legally domiciled”. Residence, in turn is defined in terms of domicile and is dependent upon the applicant’s expressed intent, his conduct and “ all attendant surrounding circumstances ”. With some particularity, subdivision (c) goes.on to list criteria, which the board of elections may deem relevant in determining an. applicant’s residence for voting purposes. These items “ are nothing more than an elaboration [and codification] of the criteria to be considered in assessing the qualification to vote [as envisaged in § 150],. * * * items, which have always been matters [under the decisional law of this State] properly considered in making a determination of one’s ' residence ’. No additional qualifications are set forth or mandated” (Gorenterg v. Onondaga County Bd. of Elections, 38 A D 2d 145, 147; emphasis in original).
By decisional law in this State, residence for the purposes of registration and voting imports not only an intention to reside at a fixed place, but also personal presence in that place coupled with conduct which bespeaks of such an intent (cf. Matter of Newcomb, 192 N. Y. 238, 250-252). It is the fixed and permanent home of the elector from which the Constitution, as well as the Election Law, contemplates that the elector shall register and vote; and, though residence in a university dormitory satisfies the requirement of physical presence, the coincidental declarations of applicants concerning their intent to reside in the State or relevant voting district are not conclusive and election officials may look to the actual facts and circumstances attending such professions (see, e.g., Silvey v. Lindsay, 107 N. Y. 55; Matter of Goodman, 146 N. Y. 284).
Under ordinary circumstances, and at common law, the fact of physical presence within a particular election district may be deemed consistent with the claimed change in permanent residence (Matter of Blankford, 241 N. Y. 180, 183). In situations involving students, however, physical presence, without more, naturally and by constitutional mandate (N. Y. Const., art. II, § 4; see, also, Election Law, § 151, subd. [a], as amd. *48 by L. 1971, ch. 1096)[3] is deemed evidence merely of an intention to reside temporarily in a particular district for purposes consistent wtih preparation for a certain calling (see Matter of Watermeyer v. Mitchell, 275 N. Y. 73, 79, dissenting opn., FisrcH, J.). The sojourn is said to have no effect whatever upon residence for the purpose of voting. In its operation and effects, therefore, the statute is entirely neutral and has always been construed as such; it disenfranchises no one, but merely determines the place where one may legally vote (Matter of Goodman, 146 N. Y. 284, 287, supra; Silvey v. Lindsay, 107 N. Y. 55, supra; Matter of Garvey, 147 N. Y. 117; Matter of Bobbins v. Chamberlain, 297 N. Y. 108).
This, of course, is not to say that a student may not change his residence for voting purposes, but requires that the facts supportive of such a change must be wholly independent of his presence at the college for educational purposes, and that the board find elsewhere, if at all, evidence of a change of domicile. In short, “ [t]he intention to change is not alone suEcient. It must exist, but must concur with and be manifested by resultant acts which are independent of the presence as a student in the new locality” (Matter of Goodman, 146 N. Y. 284, 288, supra; see, also, Matter of Bobbins v. Chamberlain, 297 N. Y. 108, 110-111, supra; Matter of Garvey, 147 N. Y. 117, supra; Matter of Barry, 164 N. Y. 18; Matter of Blankford, 241 N. Y. 180, supra).
Thus, by its terms and in its effects, the scheme, unlike a number of cases to which we are referred (see, e.g., Jolicoeur v. Mihaly, 5 Cal. 3d 565; Wilkins v. Bentley, 385 Mich. 670; but cf. Whittington v. Board of Elections for Onondaga County, 320 F. Supp. 889 [NDNY, 1971]; Anderson v. Brown, 332 F. Supp. 1195 [S. D., Ohio, 1971]) raises no presumption for or against student residency, but rather requires that the board look to other factors in reaching a final determination. The *49 issue ultimately must be resolved with respect to each individual applicant' on the facts peculiar to his or her case tending td establish the college community as an adopted home. The determination remains what it has always been, a factual one, evaluated in terms of actual conduct, and further objectified by newly-enacted statutory criteria. Undoubtedly, room for abuse will exist and determinations will necessarily continue to be laborious, but its standards are clear and the scheme itself, contrary to the petitioners ’ urgings, is anything but vague.
But, it is further urged, students bear a special burden, and are subject to a unique line of inquiry, more extensive and discriminating than that put to nonstudent applicants for registration ; hence, the procedures contemplated under section 151 are offensive to the equal protection guarantee unless justified by some compelling State interest.
Mere classification, even among prospective voters, does not, of itself, deprive a group of equal protection of law (Carrington v. Rash, 380 U. S. 89, 92, supra). Significantly, we deal here not with a statute conditioning the right to vote or denying the franchise to citizens who are otherwise qualified to vote (see Kramer v. Union School Dist., 395 U. S. 621, 626-627, supra), yet are denied that right, hence are denied the equal opportunity for political representation, because of some additional requirement. All such distinctions, in truth- systems of exclusion, because they deny some citizens the right to vote, in order to muster constitutional scrutiny must be [1] ‘ necessary to promote a compelling state interest” (Dunn v. Blumstein, 405 U. S. 330, 337-342, supra; Kramer v. Union School Dist., 395 U. S. 621, 627, citing Carrington v. Rash, 380 U. S. 89, 96, supra; see, also, Gray v. Sanders, 372 U. S. 368; Cipriano v. City of Houma, 395 U. S. 701, 706; Evans v. Cornman, 398 U. S. 419, 421-422, supra). But not every limitation or incidental burden upon the right to vote compels such close constitutional scrutiny, casting a coincidental burden of justification upon the State (Bullock v. Carter, 405 U. S. 134, 143, citing McDonald v. Board of Election, 394 U. S. 802). Unlike those statutes which place conditions on the right to vote (Matter of Atkin, 30 N Y 2d 401, decided herewith; see, also, Dunn v. Blumstein, 405 U. S. 330, supra) or extend that right in limited purpose elections to some otherwise qualified voters and deny it to others (see, *50 e. g., Kramer v. Union School Dist., 395 U. S. 621, 627, supra), section 151 by its terms imposes no voter qualifications (see Harper v. Virginia Bd. of Elections, 383 U. S. 663; Cipriano v. City of Houma, 395 U. S. 701, supra) and withholds no constitutionally secured right (cf. Dunn v. Blumstein, 405 U. S. 330, supra). It treats instead with the-indicia of residence, and this State’s incidental efforts at ferreting out those whose claimed residence is not bona fide (see Carrington v. Rash, 380 U. S. 89, 95, supra). And classifications incidental to that determination need only be reasonable in light of the scheme’s purposes in order to be sustained (Carrington v. Rash, 380 U. S. 89, 93, supra, citing McLaughlin v. Florida, 379 U. S. 184,191; see, also, Kramer v. Union School Dist., 395 U. S. 621, 627-628, supra; Dunn v. Blumstein, 405 U. S. 330, 334-336, supra).
The criterion set forth by subdivision (c) of section 151 are applicable to all prospective registrants, student and nonstudent alike. True, subdivision (a) of the section requires that students along with other transients point to facts extrinsic of their residence at an institution in support of their declarations of domicile, but that requirement is consonant with the natural inference that their stay is for limited purposes only. The classification itself represents no more than a reasonable effort at assuring that applicants for the vote actually fulfill the requirements of bona fide residence (see Carrington v. Rash, 380 U. S. 89, 96, supra; Kramer v. Union School Dist., 395 U. S. 621, 629, supra); and the fact that it may be conducted routinely is a necessary concomitant to that classification.
We deal admittedly with what is foremost among all political rights — the right to vote. Section 151 distinguishes between residents and nonresidents — not students and other citizens. Where students are in fact residents, intending New York for a permanent home, they, as all other qualified residents, have a right to equal opportunity for political representation. Their interests, as residents is as real and as valid as any other and whatever their views, “ ‘ Fencing out ’ from the franchise a sector of the population because of the way they may vote is constitutionally impermissible ’ ’. (Carrington v. Rash, 380 U. S. 89, 94, supra.)
*51 The Board of Elections erred in summarily denying the petitioners’ applications because of their student status. In Palla that error has been corrected and the Appellate Division has properly remanded the matter for an evidentiary hearing. In Gorenberg and Bell the oversight, at least to the appearing petitioners, requires that the determinations be annulled and the petitioners afforded the oportunity of having their qualifications challenged as prescribed in section 171 of the Election Law.
Accordingly, in Matter of Palla, the order appealed from should be affirmed and in Matter of Bell and Gorenberg the order appealed from should be modified and remitted to Special Term for entry of an order annulling the summary determinations of the respondents with further direction to remand the matter to the respective boards of elections for action consistent with the procedures outlined in the Election Law.
Chief Judge Fuld and Judges Burke, Bergan, Breitel, Jasen and Gibson concur.
In Matter of Palla: Order affirmed, without costs.
In Matter of Bell and Matter of Gorenberg: Order modified, without costs, and the matter remitted to Special Term for further proceedings in accordance with the opinion herein and, as so modified, affirmed.

. On motion of the Stony Brook students, two three-Judge courts have been convened in the Federal District .Court for the Eastern District of New York (Gutwill and Ramsey, supra). In both actions hearings have been adjourned, sine die, pending the determination in State courts.

. Election Law, § 331, provides for an expedited form of review of a denial of the right to register or vote, whichever the case may be; and an action to enjoin a threatened challenge would be, under ordinary circumstances, premature. Nevertheless, as events have it, those- petitioners in Bell who sought to enjoin the challenges have effectively been denied -their right to vote in the past election. Since we have no way of knowing whether their names have since been struck from voter registration rolls, the situations are substantially. the same.

. Election Law, § 151, subd. (a), applies not only to students but to other recognizable categories of persons whose presence in this State might properly be deemed transient and thus present special problems in determining residence (see Carrington v. Rash, 380 U. S. 89, 95, supra). All, however, are afforded the opportunity of establishing that they are bona fide residents. And, perhaps equally as important, all are said to be protected from losing their residence because of prolonged sojourns in this State.