Amy AUERBACH, Barbara Shapiro, Andrea Digregorio, Monica Rossi, Mary Ellen Scarpone, Stephen Schreiber, Sharon Sonner, Carrie Newman, Robert Weber, Louis Esbin, Alan Frutkin, on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

Raymond J. KINLEY and George Scaringe, Commissioners of the Albany County Board of Elections; Donald Rettaliata and William McKeon, Commissioners of the New York State Board of Elections, Individually and in their official capacities, Defendants.

Martha C. PEREZ, Maria S. Ramirez and Gloria A. O'Connell, on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

John J. HOGAN and Edwin F. Callahan, Commissioners of the Ulster County Board of Elections, Donald Rettaliata and William McKeon, Commissioners of the New York State Board of Elections, Defendants.

No. 80–CV–374.

United States District Court,
N.D. New York.

Oct. 10, 1984.

1504

Lewis B. Oliver, Albany, N.Y., Arthur N. Eisenberg, New York Civil Liberties Union, Jack Lester, New York City, Ronald Sinzheimer, Albany, N.Y., for plaintiffs.

Robert G. Lyman, Albany County Atty., Albany, N.Y., for defendants, Kinley and Scaringe.

Robert Abrams, Atty. Gen. of the State of N.Y., Barbara Shultz, Barbara Rottier, Albany, for defendants, Rettaliata and McKeon.

Francis T. Murray, Ulster County Atty., Kingston, N.Y., for defendants, Hogan and Callahan.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

Plaintiffs, college students from Albany and Ulster Counties, bring this action under 42 U.S.C. § 1983 on behalf of all students residing in Albany and Ulster Counties for declaratory and injunctive relief against the officials of the State and County Boards of Elections who have the responsibility of interpreting, applying, and enforcing New York State's Election Law. This action challenges the constitutionality of § 5–104 of the New York State Election Law and Article 2, section 4 of the New York State Constitution, both facially and as applied to plaintiffs.

All parties have moved for summary judgment. For the reasons set forth below the court finds that both § 5–104 and Article 2, section 4 of the New York State Constitution are unconstitutional and, accordingly, the plaintiffs' motion for summary judgment is granted.

## BACKGROUND

The facts of this case as they relate to the Albany County plaintiffs and defendants are fully set forth in this court's earlier opinion in *Auerbach v. Kinley*, 499 F.Supp. 1329 (N.D.N.Y.1980).[1] Briefly stated, plaintiffs are students who attend college in Albany and Ulster Counties and who attempted to register to vote there. At the time the complaint was filed each of the named plaintiffs had lived in his or her college community for at least thirty days and was at least eighteen years of age.[2]

Upon receipt of the plaintiffs' mail-in voter registration forms the County Election Commissioners required the plaintiffs to complete and sign special questionnaires before considering whether plaintiffs should be registered as voters in their college communities. The only basis for requiring students to complete the questionnaires was their status as students. The Albany County Board of Elections ("Board") denied plaintiffs' applications to register to vote stating that the students were not residents of Albany County for voting purposes.[3] The plaintiffs appealed the Board's decision but their appeal was denied and all of the plaintiffs were refused registration in Albany County. The Ulster County plaintiffs were also refused registration.

The plaintiffs then commenced this action under 42 U.S.C. § 1983 on behalf of themselves and all students residing in Albany and Ulster Counties. The complaint asserted, *inter alia*, that in refusing to permit students to register and vote in their college communities the defendants unconstitutionally abridged plaintiffs' right to vote in violation of the Fourteenth and Twenty-Sixth Amendments to the United States Constitution.[4] Plaintiffs sought, *inter alia*, declaratory and injunctive relief holding that the New York statutory and constitutional provisions, pursuant to which their franchise had been abridged, violated the federal constitution.

On October 9, 1980, this court rendered a preliminary decision in this case. *Auerbach v. Kinley*, 499 F.Supp. 1329 (N.D.N.Y. 1980). In that decision the court denied the defendants' motion to dismiss, certified the action as a class action pursuant to Rule

---

1. The Ulster County plaintiffs and defendants were added to this lawsuit after the court's first opinion in *Auerbach*.

2. New York State Election Law § 5–102(1) provides:

 No person shall be qualified to register for and vote at any election unless he is a citizen of the United States and is or will be eighteen years of age or over, and a resident of this State and of the county, city or village for a

minimum of thirty days next preceding election.

3. While the statutes at issue here speak in terms of "residence", it is clear that what is really at issue is "domicile." A person may have many residences but may have only one domicile.

4. Plaintiffs have also alleged violations of the Voting Rights Act, 42 U.S.C. §§ 1971, 1973. The court finds that the Voting Rights Act is inapplicable to the facts of this case.

23(b)(2) of the Fed.R.Civ.P., and granted a preliminary injunction enjoining the defendants "from adopting or·pursuing any registration policy or practice ... that directly or indirectly discriminates against students or that requires students to do anything more than is required of other applicants." *Id.* at 1343.

## DISCUSSION

Perhaps the most fundamental of all our constitutional liberties is the right to vote. As the Supreme Court stated in *Wesberry v. Sanders,*

> No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined. Our constitution leaves no room for classification of people in a way that unnecessarily abridges this right.

*Wesberry v. Sanders,* 376 U.S. 1, 17–18, 84 S.Ct. 526, 535, 11 L.Ed.2d .481 (1964). Equally fundamental, however, is the right of a state to limit the right to vote to bona fide residents. At issue here is a conflict between these two competing constitutional rights. In balancing these rights New York State's efforts to restrict the ballot to bona fide residents must not violate the equal protection clause of the federal constitution by unfairly burdening the plaintiffs' right to vote.

The Supreme Court in *Dunn v. Blumstein* recognized the tension between these competing constitutional rights and concluded that restrictions on the right to vote, including the imposition of residency requirements, must meet "close constitutional scrutiny":

> In decision after decision, this Court has made clear that a citizen has a constitutionally protected right to participate

in elections on an equal basis with other citizens in the jurisdiction. See, *e.g., Evans v. Cornman,* 398 U.S. 419, 421–22, 426 [90 S.Ct. 1752, 1754–1755, 26 L.Ed.2d 370] (1970); *Kramer . v. Union Free School District,* 395 U.S. 621, 626–28 [89 S.Ct. 1886, 1889–1890, 23 L.Ed.2d 583] (1969); *Cipriano v. City of Houma,* 395 U.S. 701, 706 [89 S.Ct. 1897, 1900, 23 L.Ed.2d 647] (1969); *Harper v. Virginia Board of Elections,* 383 U.S. 663, 667 [86 S.Ct. 1079, 1081, 16 L.Ed.2d 169] (1966); *Carrington v. Rash,* 380 U.S. 89, 93–94 [85 S.Ct. 775, 778–779, 13 L.Ed.2d 675] (1965); *Reynolds v. Sims,* [377 U.S. 533, 84 S.Ct. 1362,· 12 L.Ed.2d 506 (1964)], *supra.* This 'equal right to vote,' *Evans v. Cornman, supra* [398 U.S.] at 426 [90 S.Ct. at 1756] is not absolute; the States have the power to impose voter qualifications, and to regulate access to the franchise in other ways. See, *e.g., Carrington v. Rash, supra* [380 U.S.] at 91 [85 S.Ct. at 777], *Oregon v. Mitchell,* 400 U.S. 112, 144 [91 S.Ct. 260, 274, 27 L.Ed.2d 272] (opinion of Douglas, J.), 241 [91 S.Ct. 323] (separate opinion of Brennan, White, and Marshall, JJ.), 294 [91 S.Ct. 349] (opinion of Stewart, J., concurring and dissenting, with whom Burger, C.J., and Blackmun, J., joined). But, as a general matter, 'before that right [to vote] can be restricted, the purpose of the restriction and the assertedly overriding interests served by it must meet close constitutional scrutiny.' *Evans v. Cornman, supra* [398 U.S.] at 422 [90 S.Ct. at 1754] (1970); see *Bullock v. Carter* [405 U.S.] 134 at 143 [92 S.Ct. 849 at 855–856, 31 L.Ed.2d 92] (1972).

*Dunn v. Blumstein,* 405 U.S. 330, 336, 92 S.Ct. 995, 1000, 31 L.Ed.2d 274 (1972).

■ The statute at issue here is section 5–104 of the New York State Election Law.[5] Section 5–104 reads as follows:

**5.** New York State Election Law· § 5–104(1) tracks the language of Article 2, § 4 of the New York State Constitution. Throughout this opinion references to § 5–104 are meant to refer to both § 5–104 and Article 2, § 4 of the New York State Constitution.

Additionally, plaintiffs have challenged the constitutionality of the definition of residence set

out in § 1–104(22) of the New York State Election Law. Section 1–104(22)'provides:

> The term "residence" shall be deemed to mean that place where a person maintains a fixed, permanent and principal home and to which he, wherever temporarily located, always intends to return.

1. For the purpose of registering and voting no person shall be deemed to have gained or lost a residence by reason of his presence or absence while employed in the service of the United States, nor while engaged in the navigation of the waters of this state, or of the United States, or of the high seas; nor while a student of any institution of learning; nor while kept at any welfare institution, asylum or other institution wholly or partly supported at public expense or by charity; nor while confined in any public prison.

2. In determining a voter's qualification to register and vote, the board to which such application is made shall consider, in addition to the applicant's expressed intent, his conduct and all attendant surrounding circumstances relating thereto. The board taking such registration may consider the applicant's financial independence, business pursuits, employment, income sources, residence for income tax purposes, age, marital status, residence of parents, spouse and children, if any, leaseholds, sites of personal and real property owned by the applicant, motor vehicle and other personal property registration, and other such factors that it may reasonably deem necessary to determine the qualification of an applicant to vote in an election district within its jurisdiction. The decision of a board to which such application is made shall be presumptive evidence of a person's residence for voting purposes.

Plaintiffs contend that the statute is unconstitutional on its face and as applied. Defendants contend that the statute is a proper exercise of the State's power to determine the bona fide residency of prospective voters.

## I. *Constitutionality of New York State Election Law § 5–104*

 The Equal Protection Clause of the Fourteenth Amendment guarantees that individuals similarly situated will be dealt with in a similar manner by government.[6] This, of course, does not mean that government cannot classify groups of individuals, but rather, that when government does classify individuals it cannot do so in an arbitrary or discriminatory fashion. If a state statute classifies individuals in terms of their ability to exercise a fundamental right then the statute is subject to strict constitutional scrutiny. *See e.g. Dunn v. Blumstein*, 405 U.S. 330, 336–37, 92 S.Ct. 995, 999–1000, 31 L.Ed.2d 274 (1972). In the voting rights context the Supreme Court has recognized that when state action restricts the franchise the state bears a heavy burden of justification for the classification—the state action which restricts the franchise must advance a compelling governmental interest by the least drastic means in order to survive constitutional scrutiny. *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Phoenix v. Kolodzieski*, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970); *Evans v. Cornman*, 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970); *Kramer v. Union Free School District*, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); *Cipriano v. City of Houma*, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); *Harper v. Board of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); *Carrington v. Rash*, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965).

This court agrees with the court in *Ramey v. Rockefeller*, 348 F.Supp. 780 (E.D.N.Y.1972) that the word "permanent" as used in the statute is not meant to be taken literally, but rather, is intended to approximate the test for domicile, i.e. physical presence and an intention to remain for the time at least. In discussing this point New York Jurisprudence states:

> To satisfy constitutional requirements ... the test of a student's intention to remain in the college community must focus on his present intention; he is not required to pledge that he will remain permanently or indefinitely.

18 N.Y.Jur., *Elections* § 145 at 195 (1979).

**6.** Although plaintiffs contend that § 5–104 is unconstitutional under the Twenty-Sixth Amendment the court disagrees. While it is true that a large number of college students are 18–21 years of age there is no evidence that § 5–104 prevents registration of 18–21 year olds who are not students. The court finds that any relief afforded plaintiffs must be based on the Equal Protection Clause of the Fourteenth Amendment rather than the Twenty-Sixth Amendment.

The defendants argue that § 5–104 should not be subject to strict constitutional scrutiny because the statute does not disenfranchise students, it merely affects where they are entitled to vote. The New York Court of Appeals in *Palla v. Suffolk County Board of Elections,* agreed that "the statute is entirely neutral and has always been construed as such; it disenfranchises no one, but merely determines the place where one may legally vote." *Palla v. Suffolk County Board of Elections,* 31 N.Y.2d 36, 48, 334 N.Y.S.2d 860, 286 N.E.2d 247 (1972).

The right to vote, however, is not merely the right to register and vote somewhere, but rather, the right to vote in those elections which bear substantially on an individual's life. *See e.g. Kramer v. Union Free School District,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); *Cipriano v. City of Houma,* 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); *Phoenix v. Kolodzieski,* 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970). Compelling students who are bona fide residents of their college communities to vote from their parents' communities—with which they may have no continuing contact or interest—seriously abridges their right to vote. Proof of total disenfranchisement is not necessary to trigger strict constitutional scrutiny of a residency statute; it is sufficient if the statute deprives individuals of the ability to vote where they are residents. *See Evans v. Cornman,* 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970); *Carrington v. Rash,* 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965).

A. *Section 5–104 Creates a Rebuttable Presumption that Students are Not Residents of New York State*

In evaluating the constitutionality of § 5–104 this court must consider the statute as it has been construed by the New York Court of Appeals. Thus, the New York Court of Appeals' interpretation of a New York State statute is binding on this court. The court is not free to interpret the statute in a way contrary to that of the highest state court. *See Schad v. Mount Ephraim,* 452 U.S. 61, 65, 101 S.Ct. 2176, 2180–2181, 68 L.Ed.2d 671 (1981); *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 160, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980). With this principle in mind, the court finds that § 5–104, as construed by the Court of Appeals in *Palla,* creates a rebuttable presumption that students are not residents of New York State for purposes of voting. The Court in *Palla* stated:

> Under ordinary circumstances, and at common law, the fact of physical presence within a particular election district may be deemed consistent with the claimed change in permanent residence (citation omitted). In situations involving students, however, physical presence without more, naturally and by constitutional mandate (citation omitted) is deemed evidence *merely of an intention to reside temporarily in a particular district for purposes consistent with preparation for a certain calling.* The sojourn is said to have no effect whatever upon residence for the purpose of voting. (emphasis added)

*Palla,* 31 N.Y.2d at 47–48, 334 N.Y.S.2d 860, 286 N.E.2d 247.

> The criterion set forth by subdivision (c) of section 151 [now § 5–104(2)] are applicable to all prospective registrants, student and nonstudent alike. True, subdivision (a) of the section [now § 5–104(1)] requires that students along with other transients point to facts extrinsic of their residence at an institution in support of their declarations of domicile, *but that requirement is consonant with the natural inference that their stay is for limited purposes only.* (emphasis added).

*Palla,* 31 N.Y.2d at 50, 334 N.Y.S.2d 860, 286 N.E.2d 247.

The above quoted language clearly suggests that the *Palla* court considered students "transients" who could be constitutionally subjected to special inquiry by virtue of the temporary nature of their "stay" in New York. This statutory scheme places a greater burden of proof of residency upon students than it does on other

citizens. The plaintiffs here are only allowed to register if they submit to questioning above and beyond that required of all other applicants, and only if they overcome the presumption that they are not residents of New York State. Defendants have not come forward with any evidence demonstrating that any other group of individuals is required to submit to additional questioning when they apply to register to vote. Notwithstanding the fact that New York State has the right to ascertain whether applicants for registration are bona fide residents, the State must do so in an evenhanded and nondiscriminatory fashion.

A number of courts in other jurisdictions have struck down state statutes and practices that require students to shoulder a special burden in order to register. *See e.g. United States v. Texas,* 445 F.Supp. 1245 (1978) *aff'd mem. nom. sub. Symm v. United States,* 439 U.S. 1105, 99 S.Ct. 1006, 59 L.Ed.2d 66 (1979); *Frazier v. Callicutt,* 383 F.Supp. 15 (N.D.Miss.1974); *Sloane v. Smith,* 351 F.Supp. 1299 (M.D.Pa.1972); *Newburger v. Peterson,* 344 F.Supp. 559 (D.N.H.1972); *Johnson v. Darrall,* 337 F.Supp. 138 (S.D.Ohio 1971); *Ownby v. Dies,* 337 F.Supp. 38 (E.D.Tex.1971); *Shivelhood v. Davis,* 336 F.Supp. 1111 (D.Vt. 1971); *Bright v. Baesler,* 336 F.Supp. 527 (E.D.Ky.1971); *Anderson v. Brown,* 332 F.Supp. 1195 (S.D.Ohio 1971); *Worden v. Mercer County Board of Elections,* 61 N.J. 325, 294 A.2d 233 (1972); *Jolicoeur v. Mihaly,* 5 Cal.3d 565, 96 Cal.Rptr. 697, 488 P.2d 1 (1971); *Wilkins v. Bentley,* 385 Mich. 670, 189 N.W.2d 423 (1971). These cases stand for the proposition that the equal protection clause of the Fourteenth Amendment prohibits arbitrarily subjecting one group of individuals to burdens not placed on other citizens in the absence of a compelling justification for the classification.

B. *Section 5–104 is not necessary to the Advancement of any Compelling Government Interest*

██ Because the additional burden placed upon students pursuant to § 5–104 restricts the availability of their fundamental right to vote, the state must demonstrate that it has a compelling state interest for the challenged statute. Plaintiffs contend, and this court agrees, that the state cannot constitutionally justify the additional burden placed upon students. In a case remarkably similar to the instant case, the court stated:

> The State concedes that it is possible for a student to establish domicile at the university community. There is then, no reason why the State should, as a policy, doubt the veracity of every student who claims to have satisfied the requirements. There is no reason to assume, and the defendants have offered none that would satisfy the compelling interest test, that a person claiming to have fulfilled the domiciliary requirement is not to be believed if he is a student. Moreover, there is no reason to believe that students who have established domiciliary status within the university community will not take a keen and serious interest in the political issues of that area nor is there any reason to believe that they will not exercise their franchise in a responsible manner. Simply put there are no salient reasons to treat registering students differently from other people merely because they are students....
>
> Notwithstanding the fact that there may be a significant number of students who do intend to return to their former homes, there is an equally significant number of students who do not intend to return to their former homes, and the presumption against university domicil unfairly discriminates against them.
>
> The court believes that the presumption that all students retain a desire to return to their previous homes following the termination or completion of their college careers is not valid. The court cannot conceive of any reason why it should not be presumed that student applicants for voter registration, like any other applicant, have made their application in good faith.

*Bright v. Baesler,* 336 F.Supp. 527, 533 (E.D.Ky.1971).

In the instant case the defendants have not proffered any justification for the statute. Assuming that the compelling interest the statute was intended to further is the determination of bona fide residency of applicants for registration to vote, the court finds that the statute fails to further that interest. Undoubtedly there are individuals that are not residents of New York that are not questioned concerning their residency and who are allowed to register to vote nonetheless. For example, any individual who is employed on a temporary assignment in New York State would not be questioned about his or her residence. On the other hand, there are presumptively students who are residents of New York State who are burdened with answering questions which are skewed against them. Unless these student residents can answer the questions contained in the questionnaires to the satisfaction of the local Election Commissioners they are not allowed to register, despite the fact that they otherwise meet the requirements for residency.

■ Many of the questions contained in the questionnaire given to plaintiffs were derived from the factors listed in 5–104(2). The factors listed in 5–104(2), however, are of little assistance in determining the residence of students. The factors, at best, are irrelevant or inappropriate in determining the locus of the students' primary concern and at worst are clearly designed to discriminate against students. The primary focus of the 5–104(2) criteria is upon financial independence and occupational status. It is not surprising that local registrars have denied students in New York State the right to vote based on these factors. One of the factors, namely "residence of parents", seems designed to militate against out-of-town students. Other factors identified in 5–104(2) also seem directed against students, e.g., financial independence, business pursuits, employment, income sources, and residence for income tax purposes. Other factors are simply irrelevant to the determination of anyone's residence, i.e. age and marital status. It is difficult to understand what an individual's age or marital status has to do with the locus of one's voting domicile. The criteria set out in 5–104(2) are simply not tailored to determine one's residency and consequently the statute cannot be justified as necessary to promote a compelling governmental interest.

■ Two other governmental interests which are traditionally put forth as justifications for residency requirements are prevention of voter fraud and exclusion of disinterested voters from the electorate. Section 5–104 does not promote either of these interests. Subjecting students to a more exacting line of questioning than other applicants does nothing to insure against voter fraud. There is no evidence that students are more likely to submit a fraudulent application to register than other applicants. The Supreme Court in *Dunn v. Blumstein* rejected the justification that residency requirements deter voter fraud. *Dunn v. Blumstein*, 405 U.S. 330, 346–47, 92 S.Ct. 995, 1005, 31 L.Ed.2d 274 (1972). Likewise there is no evidence that § 5–104 advances the desire to insure that those who are insufficiently interested in the political life of the community are excluded from the electorate. There is absolutely no evidence that students are less interested in their college communities than the other members of the electorate. Indeed, this lawsuit is an indication that many students are keenly interested in their college communities and want to have the right to be politically involved in them.

Plaintiffs are obviously subject to the laws of their college communities and are affected in their daily lives by the elected officials chosen to administer those laws. Under New York's statutory scheme students are almost "automatically" rejected when they apply to register to vote. Section 5–104(1) gives election officials the right to subject students to a more exacting registration process than other citizens, and § 5–104(2) sets out the factors which the election officials should consider. Those factors are impermissibly stacked against students thereby creating an almost irrebuttable presumption against student residency. New York State has not come forward with any justification for the statute which would promote a compelling

governmental interest and therefore the court finds that § 5–104 is constitutionally impermissible. The court recognizes that New York State has a right to ascertain whether applicants for registration to vote are bona fide residents, but New York State must do so in a way that does not violate the plaintiffs' constitutional right to be treated on an equal basis with other citizens.

 ■ Even if section 5–104 were neutral on its face the manner in which New York State counties have applied it would nevertheless render it unconstitutional. The defendants claim that the same criteria are applied to all applicants who seek to register to vote and that no additional burden is placed on students. Even if in theory the same criteria for residency were used for all applicants, it is clear that only students are asked to demonstrate that they meet the criteria. While New York State may look beyond an applicant's expressed intent to make a place his or her home, the State must do so in a neutral fashion. The State cannot arbitrarily single out one group for additional scrutiny. Although the defendants assert that students as a group are more transient than the rest of the electorate and therefore additional scrutiny of students is justified, they have not presented any evidence that students as a group are more transient than other groups (e.g., construction workers, individuals on temporary job assignments, and law clerks) who are routinely allowed to register and vote without additional questioning.

 ■ Finally, the plaintiffs have challenged § 5–104 as failing to provide local officials with sufficiently precise standards for enforcement. Statutes which fail to provide such standards are unconstitutional because they permit local officials unlimited discretion in the area of constitutionally protected rights and invite arbitrary and discriminatory inferences with regard to individuals' constitutional rights. *See United States v. Texas*, 445 F.Supp. 1245 (S.D.Tex.1978) *aff'd mem. sub. nom. Symm v. United States*, 439 U.S. 1105, 99 S.Ct. 1006, 59 L.Ed.2d 66 (1979).

 ■ There is no question that § 5–104 grants each county the authority to determine residency for the purpose of voting. As can be seen from the survey of student voting submitted by the plaintiffs each county applies § 5–104 in its own way. The result is a virtual patchwork quilt of student voting across New York State—some counties routinely register students without additional questioning while other counties refuse to register any students. In *Wilkins v. Bentley*, the Supreme Court of Michigan held that conferring excessive discretion upon local clerks would result in invalidation of Michigan's student voting regulations:

> At trial, the plaintiffs were asked questions concerning bank accounts; where they obtained their support; whether they owned or leased property; and where they spent their vacations. However, these questions concerning wealth, property ownership, and travel, if used as criteria to establish residence for voting purposes are constitutionally impermissible.

> We hold that [Michigan's statute], insofar as it applies to students, does violate the due process clause of the Fourteenth Amendment of the U.S. Constitution.... [The statute] as it applies to students, is overly broad and grants a constitutionally prohibited discretion to local clerks in Michigan. The ability to exercise the precious right to vote cannot depend on whether a student attends school in a large city or a small town.

*Wilkins v. Bentley*, 385 Mich. 670, 189 N.W.2d 423, 426–27 (1971). New York's statutory scheme also confers excessive discretion upon local election officials. Thus, § 5–104 could be held unconstitutional on that basis alone. A student's right to vote should not be contingent upon the whims of the local elections officials.

## II. *Relief*

The court finds that § 5–104 of the New York State Election Law and Article 2, § 4 of the New York State Constitution are unconstitutional on their face and as applied in that students are denied the fundamental right to vote in their college communities when the burden placed on their

right to vote is unnecessary to the advancement of any compelling governmental interest. Accordingly, the following relief is hereby

ORDERED:

1. The defendants are permanently enjoined:

(a) From requiring any additional documentation from any student beyond that required of all other applicants unless defendants have reasonable grounds on which to base a belief that the individual applicant's claim of residency is untrue; and

(b) From adopting or pursuing any registration policy or practice that directly or indirectly discriminates against students or that requires students to do anything more than is required of other applicants.

2. The plaintiffs are entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988. The plaintiffs are directed to submit documentation of same.

IT IS SO ORDERED.