765 F.2d 350
 54 USLW 2030, 25 Ed. Law Rep. 1068
 Amy AUERBACH, Barbara Shapiro, Andrea Digregorio, Monica
Rossi, Mary Ellen Scarpone, Stephen Schreiber, Sharon
Sonner, Carrie Newman, Robert Weber, Louis Esbin, Alan
Frutkin, on behalf of themselves and all other persons
similarly situated, Plaintiffs-Appellees,
v.
Donald RETTALIATA and William McKeon, Commissioners of the
New York State Board of Elections, Individually
and in their official capacities,
Defendants-Appellants.
Martha C. PEREZ, Maria S. Ramirez and Gloria A. O'Connell,
on behalf of themselves and all other persons
similarly situated, Plaintiffs-Appellees,
v.
Donald RETTALIATA and William McKeon, Commissioners of the
New York State Board of Elections, Defendants-Appellants.
 No. 828, Docket 84-7949.
 United States Court of Appeals,
Second Circuit.
 Argued March 5, 1985.
Decided June 17, 1985.
 
 O. Peter Sherwood, Deputy Sol. Gen., New York City (Robert Abrams, Atty. Gen., Robert Hermann, Sol. Gen., Barbara Rottier, Christopher Keith Hall, Asst. Attys. Gen., New York City, on brief), for defendants-appellants.
 Lewis B. Oliver, Jr., N.Y. Public Interest Research Group, Albany, N.Y. (Arthur N. Eisenberg, N.Y. Civil Liberties Union, New York City, Ronald Sinzheimer, Student Assn. of the State Univ., Albany, N.Y., Jack Lester, New York City, on the brief), for plaintiffs-appellees.
 Before MANSFIELD, NEWMAN and KEARSE, Circuit Judges.
 JON O. NEWMAN, Circuit Judge.
 
 
 1
 This appeal concerns a voting rights suit brought on behalf of a class of all students residing in, and desiring to register and vote in general elections in, Albany and Ulster Counties, New York. The class representatives were refused registration after completing a special questionnaire required by county officials to determine the residence of students for voting purposes. They brought this suit against the commissioners of the state and county boards of elections, challenging the constitutionality of section 5-104 of the New York Election Law and Article II, section 4, of the New York State Constitution both facially and as applied. The District Court for the Northern District of New York (Neal P. McCurn, Judge) granted a preliminary injunction ordering registration of the class representatives and prohibiting discrimination against students seeking to register to vote, Auerbach v. Kinley, 499 F.Supp. 1329, 1343 (N.D.N.Y.1980), and, on cross-motions for summary judgment, declared these provisions unconstitutional on their face and as applied and issued a permanent injunction prohibiting discrimination against students seeking to register, Auerbach v. Kinley, 594 F.Supp. 1503 (N.D.N.Y.1984).
 
 
 2
 Donald Rettaliata and William McKeon, commissioners of the New York State Board of Elections, appeal from the final judgment of the District Court. Their appeal challenges only the declaration that the state law provisions at issue are unconstitutional on their face and thereby implicates the grant of injunctive relief against them. The holding of unconstitutionality as applied is unchallenged, since review is not sought by the state defendants and the county defendants took no appeal. We reverse that part of the District Court's judgment declaring the state law provisions unconstitutional on their face and remand for modification of the injunction.
 
 I.
 
 3
 By statute New York defines "residence" for voting purposes as "that place where a person maintains a fixed, permanent and principal home and to which he, wherever temporarily located, always intends to return." N.Y.Elec.Law Sec. 1-104(22) (McKinney 1978). The District Court correctly noted that, as a matter of state law, this definition--particularly the requirement that the home be "permanent"--should not be read literally but rather "is intended to approximate the test for domicile, i.e., physical presence and an intention to remain for the time at least." Auerbach v. Kinley, supra, 594 F.Supp. at 1507 n. 5 (citing Ramey v. Rockefeller, 348 F.Supp. 780 (E.D.N.Y.1972) (three-judge court, Friendly, J.)); see Palla v. Suffolk County Board of Elections, 31 N.Y.2d 36, 47, 334 N.Y.S.2d 860, 866, 286 N.E.2d 247, 251 (1972) ("Palla "). "Presence" and "intention to remain" are explicated by the election law provisions challenged by this lawsuit. The statute at issue reads:
 
 
 4
 Qualifications of voters; residence, gaining or losing
 
 
 5
 1. For the purpose of registering and voting no person shall be deemed to have gained or lost a residence by reason of his presence or absence while employed in the service of the United States, nor while engaged in the navigation of the waters of this state, or of the United States, or of the high seas; nor while a student of any institution of learning, nor while kept at any welfare institution, asylum or other institution wholly or partly supported at public expense or by charity; nor while confined in any public prison.
 
 
 6
 2. In determining a voter's qualification to register and vote, the board to which such application is made shall consider, in addition to the applicant's expressed intent, his conduct and all attendant surrounding circumstances relating thereto. The board taking such registration may consider the applicant's financial independence, business pursuits, employment, income sources, residence for income tax purposes, age, marital status, residence of parents, spouse and children, if any, leaseholds, site of personal and real property owned by the applicant, motor vehicle and other personal property registration, and other such factors that it may reasonably deem necessary to determine the qualification of an applicant to vote in an election district within its jurisdiction. The decision of a board to which such application is made shall be presumptive evidence of a person's residence for voting purposes.
 
 
 7
 N.Y.Elec.Law Sec. 5-104 (McKinney 1978). The challenged provision of the New York State Constitution, Article II, section 4, is nearly identical to section 5-104(1) of the New York Election Law. Our discussion and analysis of section 5-104(1) is equally applicable to Article II, section 4, unless otherwise indicated.
 
 
 8
 The District Court reviewed the construction the New York Court of Appeals has given to section 5-104 and concluded that the statute could not survive "strict scrutiny" equal protection analysis because, Judge McCurn concluded, the provision creates a rebuttable presumption that students are not residents of their college communities and because the burden of proof of residency thus imposed on students is not necessary to the advancement of any compelling state interest. For the reasons that follow, we reverse.
 
 
 9
 " 'In evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered.' " Kolender v. Lawson, 461 U.S. 352, 355, 103 S.Ct. 1855, 1857, 75 L.Ed.2d 903 (1983) (quoting Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 n. 5, 102 S.Ct. 1186, 1191, n. 5, 71 L.Ed.2d 362 (1982)). The interpretation of a state statute or constitutional provision made by that state's highest court is binding on a federal court. See Schad v. Borough of Mount Ephraim, 452 U.S. 61, 65, 101 S.Ct. 2176, 2180, 68 L.Ed.2d 671 (1981). The New York Court of Appeals definitively construed section 5-104 of the New York Election Law in Palla, supra, a case remarkably similar to this one.
 
 
 10
 In Palla, students denied voter registration in their college communities challenged on equal protection grounds the constitutionality of the predecessor to section 5-104, section 151 of the New York Election Law of 1949, quoted in full in Ramey v. Rockefeller, supra, 348 F.Supp. at 783-84 n. 1. The prior version included virtually the same language that now constitutes section 5-104.[1] The Court of Appeals concluded that the "statutory scheme ... represents, at most, merely a permissible effort to insure that all applicants for the vote actually fulfill the traditional requirements of bona fide residence." 31 N.Y.2d at 46, 334 N.Y.S.2d at 866, 286 N.E.2d at 251. As construed by the courts of New York, these requirements of bona fide residence include "not only an intention to reside at a fixed place, but also personal presence in that place coupled with conduct which bespeaks of such an intent." Id. at 47, 334 N.Y.S.2d at 867, 286 N.E.2d at 252 (emphasis added). Section 5-104(2) lists, "[w]ith some particularity," various "criteria which the board of elections may deem relevant in determining an applicant's residence for voting purposes," id., 334 N.Y.S.2d at 866, 286 N.E.2d at 251. As construed by the Court of Appeals, the statute identifies criteria that may demonstrate conduct bespeaking an intention to reside at a particular place.
 
 
 11
 The District Court held that, even as interpreted by the New York Court of Appeals in Palla, the factors listed in section 5-104(2) "are impermissibly stacked against students thereby creating an almost irrebuttable presumption against student residency" in the locality where they attend school. 594 F.Supp. at 1510. We disagree. Certainly the New York Court of Appeals did not think that its interpretation of the election provisions created any such presumption: "Thus, by its terms and in its effects, the [statutory] scheme ... raises no presumption for or against student residency, but rather requires that the board look to other factors [than physical presence] in reaching a final determination." Palla, supra, 31 N.Y.2d at 48, 334 N.Y.S.2d at 868, 286 N.E.2d at 252, 253. And nothing on the face of section 5-104(2) creates a presumption against student residency, for, as the Court of Appeals noted in Palla, the criteria set forth in this subsection "are applicable to all prospective registrants, student and non-student alike." Id. at 50, 334 N.Y.S.2d at 869, 286 N.E.2d at 254.[2]
 
 
 12
 If the provisions of New York law challenged in this appeal are facially unconstitutional, the defect must arise from the classification effected by section 5-104(1). That subsection provides that "no person shall be deemed to have gained or lost a residence by reason of his presence or absence ... while a student...." N.Y.Elec.Law Sec. 5-104(1). Appellees read this language as establishing a different substantive standard for students than for non-students when both groups seek to establish residency for purposes of voting. But the New York Court of Appeals has not so construed the statute. Rather than create a different substantive standard for students, the statute simply identifies "recognizable categories of persons whose presence in this State might properly be deemed transient and [who] thus present special problems in determining residence [for voting purposes]." Palla, supra, 31 N.Y.2d at 48 n. 3, 334 N.Y.S.2d at 867 n. 3, 286 N.E.2d at 252 n. 3 (emphasis added); see Carrington v. Rash, 380 U.S. 89, 95, 85 S.Ct. 775, 779, 13 L.Ed.2d 675 (1965). Though specially identified, students and other classes of persons are held by the statutory scheme to the same substantive standard as all other applicants for registration.
 
 
 13
 At most the statute distinguishes students by subjecting them, along with other groups likely to include transients, to the risk of a more searching inquiry than is applicable to prospective registrants generally as to whether they have met the substantive standard for voter eligibility. Even this procedural distinction is not as pronounced as appellees contend. In their view, their ability to meet the substantive standard has been made extremely difficult because, unlike others wishing to register, their presence in the community in which they wish to vote is accorded no evidentiary weight at all. Some support for this view is gleaned from a phrase in Palla arguably suggesting that a student's residence in a college community has "no effect" upon a determination of residence for the purpose of voting. Palla, supra, 31 N.Y.2d at 48, 334 N.Y.S.2d at 867, 286 N.E.2d at 252. Read in context, however, this passage does not preclude all consideration of a student's presence, see Ramey v. Rockefeller, supra, 348 F.Supp. at 786. As Judge Friendly observed in Ramey, the words of section 5-104(1), as construed in Palla, "say to us only that presence of a former non-domiciliary as a student within the state is not alone sufficient to supply ... the required mental element" of bona fide residence. Id. The issue in this case therefore becomes whether the challenged statute impermissibly classifies students by obliging them to produce evidence, in addition to physical presence, demonstrating that they satisfy the substantive standard of an intention to remain in the community in which they seek to register.
 
 
 14
 Appellees maintain, and appellants dispute, that "strict scrutiny" must be given to the procedural distinction that section 5-104 imposes upon students and members of other groups likely to include transients. Appellees rely on numerous decisions of the Supreme Court subjecting to strict scrutiny state laws denying various classes of individuals the right to vote. E.g., Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (those failing to meet a durational residence requirement of one year in a state and three months in a county); City of Phoenix v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970) (those not owning property); Evans v. Cornman, 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970) (those residing in federal enclave); Harper v. Virginia Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (those who had not paid a poll tax); see also Marston v. Lewis, 410 U.S. 679, 93 S.Ct. 1211, 35 L.Ed.2d 627 (1973) (upholding 50-day residence requirement); Burns v. Fortson, 410 U.S. 686, 93 S.Ct. 1209, 35 L.Ed.2d 633 (1973) (same). In each of these cases the challenged state law provision prohibited an identified class of persons from voting. It is not clear whether strict scrutiny is required of classifications that only make voting somewhat more difficult for some groups than for others. The Supreme Court has noted the distinction between "an absolute denial of the franchise" and provisions that "made casting a ballot easier for some." Kramer v. Union Free School District, 395 U.S. 621, 626 n. 6, 89 S.Ct. 1886, 1889 n. 6 (1969). For example, the Court applied the "rational basis" test to uphold a state's decision not to supply absentee ballots to pretrial detainees, even though such ballots were available to others. McDonald v. Board of Election Commissioners, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). Possibly, the Court, though using the rational basis test to uphold a provision that made distinctions between groups eligible for a device that made voting easier, would apply strict scrutiny to a provision that affirmatively placed a special procedural burden on one class of potential voters. That course seems likely at least as to a procedural device so burdensome as to create a substantial risk that numerous members of an identified class would be barred from voting.
 
 
 15
 We need not resolve the issue concerning the degree of scrutiny for assessing the procedural distinction reflected in section 5-104 because, even according the provision the strict scrutiny appropriate to voter exclusion cases, we conclude that the provision on its face validly "reflects a state legislative judgment" of what is "necessary to achieve the State's legitimate goals." Marston v. Lewis, supra, 410 U.S. at 680, 93 S.Ct. at 1212. There is no doubt that "the States have the power to require that voters be bona fide residents of the relevant political subdivision." Dunn v. Blumstein, supra, 405 U.S. at 343, 92 S.Ct. at 1004. By identifying classes of persons whose residence for voting purposes and whose physical residence may not coincide, section 5-104(1) permissibly aids the State in "ferreting out those whose claimed residence is not bona fide." Palla, supra, 31 N.Y.2d at 50, 334 N.Y.S.2d at 869, 286 N.E.2d at 253. There is "nothing constitutionally impermissible in New York's having thus enumerated certain categories of persons who, despite their physical presence, may lack the intention required for voting, persons who, in the Supreme Court's words, 'present specialized problems in determining residence.' " Ramey v. Rockefeller, supra, 348 F.Supp. at 786 (quoting Carrington v. Rash, supra, 380 U.S. at 95, 85 S.Ct. at 779).
 
 
 16
 At the time Ramey was decided, the three-judge court noted that, though the Palla decision appeared to give the predecessor of section 5-104 a construction comporting with constitutional standards, it was then "too early to determine whether, in light of Palla[,] New York will or will not apply a notion of a student's intention to make a dormitory or other room a home that is too rigorous to meet constitutional standards." Id. at 790 (footnote omitted). Subsequent decisions of the New York courts have given no cause for concern. See Cesar v. Onondaga County Board of Elections, 54 A.D.2d 1108, 389 N.Y.S.2d 58 (4th Dep't) (upholding right of student to register), appeal dismissed, 40 N.Y.2d 1079, 392 N.Y.S.2d 1029, 360 N.E.2d 964 (1976); Matter of Falcher, 107 Misc.2d 296, 433 N.Y.S.2d 981 (Sup.Ct. Nassau County 1980) (same). Cf. Iafrate v. Suffolk County Board of Elections, 42 N.Y.2d 991, 398 N.Y.S.2d 413, 368 N.E.2d 35 (1977) (upholding right of voluntary resident of psychiatric facility to register); Fenn v. Suffolk County Board of Elections, 59 A.D.2d 709, 398 N.Y.S.2d 448 (2d Dep't 1977) (same).
 
 
 17
 We do not agree with appellees that the Equal Protection Clause requires New York to forgo identification of classes of likely transients in favor of an acceptance of every applicant's claim of domicile, subject to further inquiry only upon some substantial challenge. Requiring groups likely to include transients to show something in addition to physical presence in the community in order to meet a neutral test of residence for purposes of voting comports with the element of "necessity" in the "strict scrutiny" test.
 
 
 18
 We also reject appellees' contention that section 5-104 is constitutionally deficient by according overly broad discretion to election officials in determining voter residence. As the three-judge court observed in Ramey v. Rockefeller, supra, "the decision of the Election Board is guided by the factors set out in [section 5-104(2) ] and is subject to judicial review in accordance with common law rules. It is difficult to see what more could be expected so long as bona fide residence, rather than mere presence, may be required. Cf. Carrington v. Rash, supra, 380 U.S. at 95 [85 S.Ct. at 779]." 348 F.Supp. at 791 n. 7.
 
 
 19
 If, in the course of administering section 5-104, election officials engage in discrimination against students that transgresses constitutional standards, courts are not powerless to provide appropriate relief, as the District Court demonstrated in this case by the injunction aimed at ending discriminatory practices as they were found to exist in Albany and Ulster counties.[3] We hold only that appellees are not entitled to have the state statute declared unconstitutional on its face.[4]
 
 
 20
 The judgment of the District Court is reversed insofar as it declares section 5-104 of the New York Election Law and Article II, section 4, of the New York Constitution facially unconstitutional. The cause is remanded to the District Court for modification of the injunction with respect to the state defendants in light of the ruling upholding the facial constitutionality of the challenged provisions. The revision with respect to the state defendants may either eliminate them entirely from the injunction, or, if plaintiffs can justify entitlement to some relief against the state defendants with respect to the claim of unconstitutional application of the state statutory and constitutional provisions, adjust the relief accordingly.
 
 
 21
 Reversed in part and remanded.
 
 
 
 [1]
 In addition, the prior version included a requirement that every member of the classes now identified in section 5-104(1), including students, file a written statement "showing where he actually resides and where he claims to be legally domiciled, his business or occupation, his business address, and to which class he claims to belong." See Ramey v. Rockefeller, supra, 348 F.Supp. at 783 n. 1. In 1976, with the enactment of the election laws currently in effect, this requirement was relaxed: Instead of requiring a statement of all members of the designated classes, the current version requires a statement only of those who reside at a location different from their domicile and wish to vote where they are domiciled. N.Y.Elec.Law Sec. 5-222 (McKinney 1978). State law now does not require students or members of classes identified in section 5-104(1) to furnish a prescribed statement when they claim that their place of current residence is their domicile
 
 
 [2]
 Whether such factors have been used unconstitutionally to prevent students from registering in their college communities is not an issue on this appeal. This issue, including the effects of the use by county officials of a questionnaire required of students, concerns the constitutionality of the election provisions as applied. Because the use of such a questionnaire is not required by state law, we cannot consider it when ruling on the facial constitutionality of the election provisions, the only issue raised on this appeal
 
 
 [3]
 The injunction prohibits imposing any requirement upon students that is not required of non-students. See Auerbach v. Kinley, supra, 594 F.Supp. at 1512. We need not determine whether this remedy was broader than necessary to eliminate the discriminatory practices found to have been practiced against students by the county election officials in Albany and Ulster Counties because those officials have not appealed from the issuance of the injunction against them
 
 
 [4]
 Indeed, the record contains affirmative evidence that the challenged provisions do not suffer from facial invalidity. Appellees presented survey evidence concerning the efforts of students to register in various counties of New York. The evidence showed that all students seeking to register in New York County became enrolled voters, though local election officials were operating under the same statutory and constitutional provisions challenged in this litigation