OPINION OF THE COURT
Herbert A. Posner, J.
While sitting in a Special Term for Election Matters,[1] on November 6, 1984, the court was presented with a novel issue that does not appear to have been addressed before at either the appellate level or nisi prius. Though the issue (as Mondale’s candidacy) became moot after the election, it nevertheless merits discussion for three reasons: (1) a likelihood of repetition in the future among other members of the public; (2) a matter typically evading review because of the limited duration created by the voting process; and (3) the novelty of the issue and its significance to similarly situated individuals.
In spite of the unprecedented campaign by both parties and numerous politicians (e.g., Jackson, Cuomo) to register more people than ever before, in the hope that this would induce eligible voters to participate in the presidential election, a smaller percentage voted on November 6, 1984 than in 1980 (50.6% versus 51.4%). When 49.4% of the electorate fail to participate in the electoral process, it is incumbent on a Judge sitting on Election Day to review carefully every petition for a court order requesting permission to vote after the voter was *459 challenged by the local board of elections. Almost all the challenges are either the result of negligence on the part of the voter or mechanical defect in the use of the lever that closes the curtain to the voting machine but which also records your vote when you reopen the curtain.[2] Of the scores of people who presented themselves before the court seeking permission to vote, only one presented a unique problem.
Olivia Haub, a resident of Queens County who was over 18 years of age, became a naturalized citizen on October 30, 1984, and was eager to exercise her right to vote on Election Day, November 6, 1984. However, she had been unable to register to vote because she was not a citizen on the final day for local registration of voters, October 13, 1984, and when she tried to register after her naturalization, she was informed it was too late. Nevertheless, on Election Day, she appeared at the polls in her election district and demanded the right to vote. When she was refused, she enlisted the services of an attorney who prepared a verified petition in support of a proposed court order, directing the inspectors of election in her election district to permit her to register and vote.
Is the court empowered to issue an order permitting a person to vote who became a naturalized citizen after the final day for registration?
At one time, in order to vote a naturalized citizen had to be naturalized “at least ninety days prior to the day of election.”[3] In 1964, this requirement was subjected to judicial scrutiny when a person whose date of naturalization fell short of the 90-day period required to vote in the November, 1964 election, moved to have it declared unconstitutional. A decision on this motion, made and heard in Supreme Court, New York County, was rendered by Honorable Francis T. Murphy, Jr., now the Presiding Judge of the Appellate Division, First Department. In that decision, declaring the requirement unconstitutional, Justice Murphy stated: “A naturalized citizen ‘becomes a member of the society, possessing all the rights of a native citizen, and standing, in the view of the constitution, on the footing of a native. *460 The constitution does not authorize Congress to enlarge or abridge those rights. The simple power of the national Legislature is to prescribe a uniform rule of naturalization, and the exercise of this power exhausts it, so far as respects the individual.’ (Marshall, Ch. J., in Osborn v. Bank of United States, 9 Wheat. [22 U.S.] 738, 827 [1824]). Clearly, if the Congress of the United States may not ‘enlarge or abridge’ the rights of a naturalized citizen qua naturalized citizen, the States may not so do.” (Matter of Van Berkel v Power, 44 Misc 2d 506, 508.) However, the Court of Appeals, Judge Fuld dissenting, reversed the lower court and dismissed the petition observing that the “provisions for a 90-day wait after naturalization and before voting are like all other legislative enactments supported by a presumption of validity so strong as to demand of those who attack them a demonstration of invalidity beyond a reasonable doubt, and the courts strike them down only as a last unavoidable result.” (Matter of Van Berkel v Power, 16 NY2d 37, 40.) However, in 1967, the 90-day waiting period for naturalized citizens was removed as a requirement for voting by constitutional amendment and statutory change. The amendments also drastically reduced the residency requirements for voting.[4]
In the years that followed, most of the other limitations placed on the exercise of the right to vote in the State of New York have either been removed by the Legislature or struck down by the courts. (See, e.g., Matter of Atkin v Onondaga County. Bd. of Elections, 30 NY2d 401; Manhattan State Citizens’ Group v Bass, 524 F Supp 1270; Bishop v Lomenzo, 350 F Supp 576.) Under present New York law, a person is qualified to register for and vote at a presidential election if he or she “is a citizen of the United States and is or will be, on the day of such election, eighteen years of age or over”. (Election Law, § 5-102, subd 1.) Therefore, Olivia Haub had the necessary qualifications and would have been entitled to vote in the presidential election on November 6, 1984, if she were registered.
The'Election Law of this State provides a mechanism whereby a qualified voter who is not registered can be permitted to vote. Section 5-100 of the Election Law states that: “A person shall not be .entitled to vote in any election held pursuant to this chapter unless he shall be registered, and if required, enrolled * * * unless he shall present a court order directing that he be permitted to vote at such election” (emphasis added). One would believe, at first blush, that this discretion given to the court *461 should only be exercised if the voter claims to have registered in the past, but for some reason the voter’s registration card was mislaid and could not be found in the local election district hooks. Therefore, if the voter satisfies a Judge that he (or she) is a registered voter, the court has the authority to order the board of elections to permit him (or her) to vote. However, if the voter admits that she never registered, it would be an abuse of judicial authority to enfranchise her.
However, section 8-302 of the Election Law provides that a voter for whom no registration poll record can be found on Election Day shall be permitted to vote provided he presents a court order and subdivision 3 of section 16-108 of the Election Law authorizes a Supreme Court Justice to issue an order directing the inspectors to allow a person to vote and, where necessary, directing the board of elections to complete the voter’s registration and enrollment records. A liberal interpretation (and anything less would not do justice to the spirit embodied in this fundamental right of citizenship) of these coordinate sections belies the strict limitation of the use of this judicial authority to situations where the voter claims to satisfy the basic requirements of age, citizenship and registration.
The Appellate Division, Second Department, in 1918 concluded that “Registration does not qualify the voter. It ascertains the place where the vote may be cast and the right of the person to cast it in such place.” (Matter of Curtin v Denton, 183 App Div 312, 314-315.) In 1890, the Court of Appeals, in a unanimous decision, described registration as follows: “Registration is the method of proof prescribed for ascertaining the electors who are qualified to cast votes and the registers are the lists of such electors. It is a part of the machinery of elections and is a reasonable regulation, which conduces to their orderly conduct and fairness. It is one safeguard against frauds; for it is a means for furnishing all the electors of the district with the knowledge of what persons will claim the right of voting, a sufficient time in advance of the election for them to act upon it, if necessary.” (People ex rel. Stapleton v Bell, 119 NY 175, 181-182.) Earlier in that decision, the court observed that “[t]he right of suffrage is one of the most valuable and sacred rights which the Constitution has conferred upon the citizen of the state” (p 178) and “it would be a far greater menace to the security of this constitutional right, if the law regulating its exercise might prevent the vote of a citizen, duly qualified to cast it, from being received and counted, than that some fraud might be practiced by a false personation” (p 179).
*462 In the instant case, we deal with a newly naturalized citizen desirous of voting in a national election. Her failure to register was not due to any neglect or omission on her part and she went through the trouble and expense of retaining an attorney and having a petition and proposed court order prepared in order to exercise her right to vote. Permitting such a person .to vote, although not registered, is in this court’s opinion both permissible and proper. It is unlikely that there will be more than a few qualified voters in the same situation as this petitioner. Thus, permitting them to vote without being registered will not disturb the orderly conduct of elections and their reason for not being registered can be easily verified so the possibility of fraud is unlikely.
Many naturalized citizens adopt this country as their own because of the political freedom it affords them and “foremost among all political rights [is] the. right to vote.” (Matter of Palla v Suffolk County Bd. of Elections, 31 NY2d 36, 50.) Every effort should be made to insure that such a citizen is not deprived of this right, especially in a presidential election. It is this sense of obligation to our newly naturalized citizens that impelled this court to sign the order permitting Olivia Haub to vote on November 6, 1984.

. In the Eleventh Judicial District (Queens County) four Justices were assigned to sit at the central board of elections on West Street in Long Island City from 7:00 a.m. to 9:00 p.m. (one hour after polls open until the polls close).

. The usual complaint is that the lever “jumped back” before the voter had a chance to vote or the voter is honest enough to admit that he (or she) neglected to take their hand off the lever. As a result, once the lever is returned to its original position, the machine locks and can only be released again by an inspector who stands outside the voting booth. In all these instances, the inspectors refuse to let the voter cast a “fresh ballot” without a court order.

. Election Law of 1949, § 150, as added by L 1949, ch 100; NY Const, art II, § 1, before 1966 amd.

. Election Law of 1949, § 150, as amd by L 1967, ch 809, § 2; NY Const, art II, § 1, as amd 1966.