John WILLIAMS, Neal Rosenstein, Ursula Abrams, Marianne Morris, Dominick Pesola, Paul Sedita, Noah Kaufman, Margaret O'Hanlon, Jennifer Williams, Carla Rice, Sabrina Marshall, Dinah Fieske, Jill Nagle, Lauren Supraner, Jeff Hettinger, on behalf of themselves and other persons similarly situated, Plaintiffs,

v.

George D. SALERNO, R. Wells Stout, Donald Rettaliata, and William H. McKeon, as Commissioners of the New York State Board of Elections, New York State Board of Elections, Antonia D'Apice, and Marion Oldi, as Commissioners of the Westchester County Board of Elections, The Westchester County Board of Elections, Defendants.

No. 82 Civ. 8128 (RLC).

United States District Court,
S.D. New York.

Oct. 28, 1985.

New York Civil Liberties Union, New York City, (Arthur N. Eisenberg, Jeanette Sadik-Khan, of counsel), for plaintiffs.

Taylor, McCullough, Goldberger, and Geoghegan, White Plains, N.Y. (Charles A. Bradley, of counsel), for defendant, Antonia D'Apice.

Arthur Goodman, White Plains, N.Y., for defendant, Marion Oldi.

Robert B. Abrams, Atty. Gen., for the State of N.Y., New York City (Stephen M. Jacoby, of counsel), for defendants Salerno, Stout, Rettaliata and McKeon.

## OPINION

ROBERT L. CARTER, District Judge.

**History of the Case**

In September and October, 1983, approximately 450 students enrolled at the State University of New York at Purchase, New York ("SUNY–Purchase") sought to qualify to vote as residents of Purchase. Their applications were rejected: the first 101 by the joint decision of both Commissioners of the Westchester County Board of Elections, Commissioners Marion Oldi and Antonia D'Apice; the remainder, by Commissioner D'Apice unilaterally. A form letter of rejection was sent to all applicants, but was signed by both Commissioners in only

101 of the 450 rejections sent. The letter quoted § 1–104–22 of the New York Election Law, and stated that "[a] college dorm cannot be considered as fixed, permanent or principal home" and suggested that the student "register and vote from your home community." Letter dated Sept. 28, 1983, Plaintiffs' Exhibit 1.

Although Commissioner Oldi initially took the view of the law reflected in the September 28, 1983 letter, she changed her position and refused to sign any letter after the first 101 rejections. Commissioner D'Apice, in the belief that the letter reflected the proper interpretation of the law, sent letters of rejection to the remaining applicants over her signature alone.

By memorandum dated October 6, 1983, the Senior Assistant County Attorney advised Commissioners Oldi and D'Apice "[a]s an addition to my previous memo on the same topic, the Board of Elections may not prevent people from registering to vote merely because they are students." Memorandum of the Office of County Attorney, Defendant Oldi's Exhibit B. Thomas Zolezzi, counsel to the New York State Board of Elections, advised that the 350 students who had been rejected by Commissioner D'Apice should be registered on the theory that New York Election Law required such action by the Board of Elections which could act only by majority vote.

None of the students was registered, and this litigation was commenced in the Northern District of New York as a class action seeking declaratory judgment and injunctive relief to enable students enrolled at SUNY–Purchase to vote as residents of the college community. The case was transfered to this court, and a preliminary injunction was entered on November 4, 1983. The injunction enjoined refusal to allow students to register to vote. It was held that denying college students the right to register to vote on the grounds that "they were residents of a college campus" and therefore, "could not under any circumstances be permanent residents within the meaning of The [New York] [E]lection

[L]aw" was constitutionally invalid. In addition, the denial was held a violation of state law since the law required the joint action of the two Commissioners to reject an application. Transcript Nov. 4, 1983 hearing at 41.

In January, 1984, pursuant to conference with the court, it was agreed that active litigation in this case would not proceed pending the disposition of *Auerbach v. Kinley* then pending in the Northern District of New York. On October 10, 1984, Judge McCurn decided that case, holding § 5–104 of the New York Election Law unconstitutional on its face and as applied. *See Auerbach v. Kinley*, 594 F.Supp. 1503, 1507–10 (N.D.N.Y.1984). That portion of Judge McCurn's opinion holding § 5–104 to be facially unconstitutional was taken to the Second Circuit. On June 11, 1985, the Second Circuit reversed Judge McCurn holding the statute constitutional on its face. *See Auerbach v. Rettaliata*, 765 F.2d 350, 355 (2d Cir.1985).

That determination generated activity in this case. On September 16, 1985, Commissioner D'Apice moved by order to show cause to vacate the preliminary injunction entered in this case on November 4, 1983, and pending hearing sought a temporary restraining order modifying the 1983 decree. After a hearing on September 18, 1985, the application for a temporary restraining order was denied, and the motion to vacate the injunction was set down for hearing on October 3. At a conference on October 3, the matter was set down for an evidentiary hearing on October 17 and 18.

At that hearing both Commissioner Oldi and Commissioner D'Apice testified, and a deposition was taken of Thomas Zolezzi, counsel to the New York State Board of Elections, pursuant to agreement among counsel that Mr. Zolezzi's deposition was to be treated as testimonial evidence and as though the witness had testified at the October 17–18 hearing.

At the time of the events in September and October 1983, which precipitated this litigation, Commissioner D'Apice had been Commissioner for about a year, and had

been affiliated with the Westchester County Board of Elections for about 14 years. Commissioner Oldi had held her position since 1982 and had been on the Board as Deputy Commissioner since 1974.

The September 28, 1983 letter rejecting the applications was, according to Commissioner D'Apice, sent out as Board policy. She did not know how long the policy had been in effect and was not a party to the creation of this policy, nor could she recall having a conversation with any former commissioner advising her that such was Board policy. She had never seen a written memorandum memorializing the views expressed in the September 28, 1983 letter as Board policy. She stated that in her view under the state election law a dormitory cannot be a permanent address. She rejected student applicants who gave a campus building or a post office box number as an address. In September/October, 1983, when Commissioner Oldi refused to sign any rejection letters after the first 101 rejections, Commissioner D'Apice rejected student applications over her signature alone. It is her contention that New York Election Laws § 1–104–22 which provides that "'residence' shall be deemed to mean that place where a person maintains a fixed, permanent and principal home and to which he, wherever temporarily located, always intends to return" requires her to reject the registration of college students who give campus dormitories as their residence. She testified that she believed she had the authority to administer a questionnaire (Plaintiffs' Exhibit. 2) unilaterally.

Commissioner Oldi, after signing the form letter rejecting the first 101 applicants, had a change of mind over the weekend. She took the view that students should not be rejected because they gave a campus address, and she continues to differ from her colleague in that regard. Her predecessor, Commissioner McNamara, permitted a student to register from a college address; she was not aware of any Board policy regarding student enrollment being in effect prior to the events of September/October, 1983 or of any Board poli-

cy on this issue at any time. She interprets the law as barring the use of a post office box as a residence for registration for voting purposes.

Apparently because of the injunction issued in this case, the number of students registered to vote on the SUNY–Purchase campus has grown so large that the campus has now been divided into two election districts.

Thomas P. Zolezzi testified that his interpretation of the New York Election Law which he communicated to the various boards of elections was that "it would take the consent of both Commissioners to reject the registration" of an applicant when the application form is received (Zolezzi at 4–5). He relies on § 3–212(2) of the New York Election Law which requires "any action by a board must be by a majority of that board." Zolezzi at 5. He also relies on § 5–210(6)(8) for that view. He further testified that if both Commissioners agreed to send out a particular questionnaire to voters, until both agree to withdraw the questionnaire, it can continue to be sent out even over the signature of only one Commissioner. (Zolezzi at 7)

**Discussion**

■ At the outset, it should be noted that the court is of the view that *Auerbach v. Rettaliata, supra,* does not require vacation of the injunction presently in force. *Auerbach* held that the New York State Election Law § 5–104(2) was constitutional on its face and rejected the lower court's determination to the contrary. The court added however: "If, in the course of administering section 5–104, election officials engage in discrimination against students that transgresses constitutional standards, courts are not powerless to provide appropriate relief." *Id.* at 355.

The injunction presently enforced was addressed to the application of the statute, not to its facial unconstitutionality. We now examine the defendants' past and projected action to determine whether the unconstitutional action on which the injunction rests has been abandoned or modified to warrant dissolution of the injunction.

■ In 1983, student applicants from SUNY–Purchase were denied the right to register to vote because a "college dorm cannot be considered a fixed, permanent or principal line". Letter dated Sept. 28, 1983, Plaintiffs' Exhibit 1. Commissioner D'Apice adheres to that view today and proposes again to reject college students for this reason.

In *Ramey v. Rockefeller,* 348 F.Supp. 780, 788 (E.D.N.Y.1972), Judge Friendly, writing for a three-judge court, held that "the only constitutionally permissible test [of residency for voting purposes] is one which focuses on the individual's present intention and does not require him to pledge allegiance for an indefinite future. The objective is to determine the place which is the center of the individual's life now, the locus of his primary concern. The determination must be based on *all* relevant factors; it is not enough that a student, or any other former non-domiciliary, would find that the place of his presence is more convenient for voting or would enable him to take a more active part in political life. The state may insist on other indicia, including the important one of abandonment of a former home.

We think, therefore, that in determining bona fide residence for a person physically present, the state cannot go further than the test set out in the Restatement (Second) of the Conflict of Laws, § 18 (1971), namely, that he 'must intend to make the place home for the time at least.' Important points for consideration are that 'The search in each instance is for the state to which the person is most closely related at the time;' and that a person can have the proper attitude to require a domicile even if he intends to move at a fixed time in the future; but that on the other hand, 'the required attitude of mind involves to a certain extent the idea of fixety;' and that a person does not have a domicile at a place if he has the intent to return to another that had been his home. Also relevant [is] the principle, enunciated in the first Restatement that '[t]he intention required for

acquisition of a domicile of choice is an intention to make a home in fact and not an intention to acquire a domicile.' Restatement of the Conflict of Laws, § 19 (1934)."

Earlier the court had said: "If such a test [intention to reside at his present address permanently] were in fact imposed on all citizens, it would go too far in restricting the vote to the more immobile elements of the populace. It would penalize, perhaps erratically, those who make definite plans, while allowing the drifters who have uncertain plans to vote. And if the test were in fact only applied to college students, then it would be an impermissible discrimination against them." *Id.* at 788.

In *Pitts v. Black*, 608 F.Supp. 696, 709 (S.D.N.Y.1984) (Lowe, J.), the district court held that in determining whether an individual has a residence the main objective is to ascertain "the place which is the center of the individual's life ... the locus of his primary concern," (quoting from *Ramey v. Rockefeller, supra*) and the place the individual presently intends to remain.' *Martinez v. Bynum*, 461 U.S. 321 n. 13, 103 S.Ct. 1838, 75 L.Ed.2d 879 (1983).

The approach of the September 28, 1983 letter, to which Commissioner D'Apice continues to adhere, is not consistent with determining the individual's present intention to remain in his present locus, and give up his former domicile. This letter blanketly rejects all students simply because they reside on a college campus. Such interpretation of § 5–104(2) discriminates unconstitutionally against college students. Thus, the rejection of the applications of students from SUNY–Purchase to register to vote in the 18th or 19th districts because they provide a campus address is an unconstitutional application and enforcement of § 5–104, New York Election Law. For this reason the motion to vacate must be denied.

■ Movant D'Apice appears to contend that she has the right unilaterally to reject the applications of SUNY–Purchase students because it was the policy of the Westchester Board of Elections to reject such applications. Furthermore, as Thomas Zolezzi—whose interpretation of the New York Election Law is entitled to some deference—views the law, once Board policy has been established, it cannot be changed except by majority vote of the Board. Therefore, one Commissioner alone may continue to enforce Board policy. (Zolezzi 7).

Movants' argument must fail for two reasons. If the Board in fact had adopted a policy as reflected in Plaintiffs' Exhibit 1 of rejecting college applicants because a "college dorm cannot be considered a fixed, permanent or principal home," the policy would constitute an unconstitutional application of § 5–104 of the New York Election Laws for reasons set out above.

However, the evidence on this record is insufficient to disclose that any such policy ever existed. Neither Commissioner is aware of any policy being in effect prior to the September 28, 1983 form letter. Indeed, Commissioner Oldi recalls her predecessor Commissioner McNamara, approving the registration of a college student in 1980. Neither remembers any of their predecessors stating such to have been Board policy, and there are no Board minutes or written memoranda announcing such a policy. What the evidence discloses is that Commissioner Oldi agreed to sign the September 28, 1983 form letter. Then, after reflection, she concluded that the sentiments expressed did not reflect her views. Her initial agreement to sign the form letter does not appear to have resulted from any thorough discussion by the two commissioners, their deputies and staff as to the implications of the letter. Commissioner Oldi's initial assent, therefore, cannot be said to have set Board policy. Accordingly, Board policy is not reflected in the September 28, 1983 form letter and, under state law, Commissioner D'Apice is not authorized to reject college applicants unilaterally on the basis of reasons set forth in that letter.

Commissioner D'Apice's apparent intention to unilaterally send out a questionnaire would clearly violate state law since, as

indicated, both Commissioners must jointly agree to the contents of any questionnaire being sent.

 The motion to vacate or dissolve the preliminary injunction now in effect is denied. Plaintiffs would be irreparably injured in being denied the right to register and vote. The standard for granting a preliminary injunction in this circuit is irreparable injury and either the probability of success on the merits or serious questions going to the merits making them a fair ground for argument, with the balance of hardship tipping in plaintiff's favor. *Norlin Corp. v. Rooney, Pace Inc.,* 744 F.2d 255 (2d Cir.1984); *Sadowsky v. City of New York,* 732 F.2d 312 (2d Cir.1984). Plaintiffs meet both standards. Rejection of their applications to register and vote as residents of SUNY–Purchase because a campus residence is not a fixed, permanent residence under the New York Election Laws would render the rejection an unconstitutional application of the residency requirement of the New York Election Law for the reasons set out above, and, since such rejection on the basis of this record would constitute the unilateral act of the Commissioner, would violate state law as well.

Accordingly, (1) The Westchester Board of Elections is enjoined from denying to any student at SUNY–Purchase the right to register to vote in the 18th or 19th Districts of Westchester County on the ground that a campus dormitory cannot be considered a fixed, personal or principal home.

(2) So long as the Westchester Board of Elections, Commissioners D'Apice and Oldi, cannot agree as to whether students living on college campuses are entitled to register and vote as residents of their college communities, any student living on a college campus in Westchester County who has already filed or files a timely application that contains all the material information required on the registration form with the Board of Elections, shall be entitled to register and vote as a resident of the college community in which he resides and is at-

tending school. Such applications filed prior to the close of registration in October, 1985, entitle the applicant to vote in the forthcoming general election scheduled on November 5, 1985.

(3) Unless Commissioners D'Apice and Oldi agree on a questionnaire or form of inquiry to be administered pursuant to § 5–104(2) to students or any other applicants seeking to register and vote, no such inquiry shall be conducted or administered by defendants, their agents or employees.

IT IS SO ORDERED.