792 F.2d 323
 37 Ed. Law Rep. 40
 John WILLIAMS, Neal Rosenstein, Ursula Abrams, Marianne
Morris, Dominick Pesola, Paul Sedita, Noah Kaufman, Margaret
O'Hanlon, Jennifer Williams, Carla Rice, Sabrina Marshal,
Dinah Fieske, Jill Nagle, Lauren Supraner, Jeff Hettinger,
on behalf of themselves and other persons similarly
situated, Plaintiffs-Appellees,
v.
George D. SALERNO, R. Wells Stout, Donald Rettaliata and
William H. McKeon, as Commissioners of the New York State
Board of Elections, New York State Board of Elections,
Antonia D'Apice and Marion Oldi, as Commissioners of the
Westchester County Board of Elections, the Westchester
County Board of Elections, Defendants,
Antonia D'Apice, Defendant-Appellant,
Marion Oldi, Defendant-Appellee.
 No. 822, Docket 85-7896.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 10, 1986.
Decided June 10, 1986.
 
 Charles A. Bradley, White Plains, N.Y. (of counsel to Taylor, McCullough, Goldberger and Geoghegan), for defendant-appellant.
 Arthur Eisenberg, New York Civil Liberties Union, New York City, for plaintiffs-appellees.
 Arthur H. Goodman, White Plains, N.Y., for defendant-appellee.
 Before MANSFIELD, PIERCE and ALTIMARI, Circuit Judges.
 ALTIMARI, Circuit Judge:
 
 
 1
 A century ago the little known American writer R.L. Sharpe made the following poetic observation:
 
 
 2
 Each is given a bag of tools,
 
 
 3
 A shapeless mass,
 
 
 4
 A book of rules;
 
 And each must make
 
 5
 Ere life is flown,
 
 A stumbling-block
 
 6
 Or a stepping-stone.
 
 
 7
 In the instant case we are presented with two Commissioners of the Westchester County Board of Elections, Marion Oldi and Antonia D'Apice, who were given the public trust, a stack of registration applications, and the New York Election Law. From these elements Commissioners Oldi and D'Apice have constructed an impasse so firmly rooted in an unyielding foundation of petty party politics as to require the intervention of the federal judiciary. That intervention took the form of an injunction issued by the District Court for the Southern District of New York, entered virtually on the eve of the 1985 general election. Commissioner D'Apice now appeals from that order.
 
 BACKGROUND
 
 8
 The Westchester County Board of Elections (the "Board") is composed of two commissioners, one from each of the two major political parties. Commissioner Oldi is the current Democratic appointment to the Board. Commissioner D'Apice is the current Republican appointment.
 
 
 9
 In September, 1983 approximately 450 applications to register to vote from students at the State University of New York at Purchase ("SUNY-Purchase") were delivered to the Board. Such a large influx of student applications was an unusual occurrence. The applications indicated that a solid majority of the students wished to register as Democrats.
 
 
 10
 Commissioners Oldi and D'Apice discussed how to react to the sudden influx of student applications and agreed to send the applicants the following letter dated September 28, 1983:
 
 
 11
 Your application for voter registration in Westchester County has been denied as you lack the necessary residential qualifications.
 
 
 12
 Residence as defined by Section 1-102, Sub. 22 [sic] of the New York State Election Law is "....... that place where a person maintains a fixed, permanent and principal home and to which he, wherever temporarily located, always intends to return." A college dorm cannot be considered a fixed, permanent or principal home.
 
 
 13
 This Board takes the position, as affirmed in the case of Palla versus Suffolk County, that a student has a greater tie to his home community than to the school area. We, therefore, suggest you register and vote from your home community.
 
 
 14
 Both commissioners signed the letter and the Board staff began the task of sending copies to all the student applicants.
 
 
 15
 After signing approximately 100 such letters Commissioner Oldi experienced a change of heart. Commissioner Oldi testified that her view toward the student applications changed as a result of her own reflection on the problem over the weekend. She also testified that she did not discuss the matter with any Democratic Party officials before reaching her new decision. She did, however, discuss the situation with her personal attorney, Arthur H. Goodman, who later became the Democratic candidate for Westchester County Executive.
 
 
 16
 Commissioner Oldi refused to sign any more copies of the September 28 letter and informed Commissioner D'Apice that she now believed that the students should be allowed to register. Commissioner D'Apice responded by continuing to send out copies of the letter to the remaining student applicants over her signature alone. None of the students were registered.
 
 
 17
 A group of SUNY-Purchase students then filed suit in the Northern District of New York. The students claimed that the Board's failure to register them violated both the United States Constitution and New York election law. The students moved for preliminary injunctive relief before Judge McCurn on November 2, 1983. Judge McCurn then determined that the Northern District was not the proper venue and transferred the case to the Southern District of New York. Two days later the parties appeared before Judge Carter, who granted a preliminary injunction. That injunction prevented the Westchester Board of Elections from rejecting student applications to register on the ground that a college campus is not a valid residence.
 
 
 18
 Active litigation of the matter then ceased as the parties awaited a determination by this court in the case of Auerbach v. Rettaliata, 765 F.2d 350 (2d Cir.1985). That case involved a challenge to the facial constitutionality of section 5-104 of the New York Election Law (McKinney 1978). On June 17, 1985 Auerbach v. Rettaliata determined that section 5-104 is not unconstitutional on its face. The court's opinion in Auerbach noted, however, that election officials might administer the statute in an unconstitutional manner, in which case the federal judiciary would be able to enjoin any impermissibly discriminatory practices. See Auerbach v. Rettaliata, 765 F.2d at 355-56.
 
 
 19
 The Auerbach decision stimulated new activity in the instant matter. On September 16, 1985 Commissioner D'Apice moved by order to show cause to vacate the preliminary injunction. The essence of Commissioner D'Apice's argument was that the Auerbach determination that section 5-104 is constitutional on its face destroyed the foundation for the preliminary injunction. Commissioner D'Apice's application for a temporary restraining order to modify the then existing injunction was denied after a hearing on September 18, 1985. A hearing on the motion to vacate the injunction was then held on October 17, 1985. By that time, the SUNY-Purchase campus contained over 1,000 registered voters and had been divided into two election districts.
 
 
 20
 On October 28, 1985 Judge Carter denied the motion to vacate the 1983 injunction and issued the following three paragraph injunction:
 
 
 21
 ... (1) The Westchester Board of Elections is enjoined from denying to any student at SUNY-Purchase the right to register to vote in the 18th or 19th Districts of Westchester County on the ground that a campus dormitory cannot be considered a fixed, personal or principal home.
 
 
 22
 (2) So long as the Westchester Board of Elections, Commissioners D'Apice and Oldi, cannot agree as to whether students living on college campuses are entitled to register and vote as residents of their college communities, any student living on a college campus in Westchester County who has already filed or files a timely application that contains all the material information required on the registration form with the Board of Elections, shall be entitled to register and vote as a resident of the college community in which he resides and is attending school. Such applications filed prior to the close of registration in October, 1985, entitle the applicant to vote in the forthcoming general election scheduled on November 5, 1985.
 
 
 23
 (3) Unless Commissioners D'Apice and Oldi agree on a questionnaire or form of inquiry to be administered pursuant to Sec. 5-104(2) to students or any other applicants seeking to register and vote, no such inquiry shall be conducted or administered by defendants, their agents or employees.
 
 
 24
 Williams v. Salerno, 622 F.Supp. 1271, 1276 (S.D.N.Y.1985). Commissioner D'Apice now appeals from that order.
 
 DISCUSSION
 
 25
 The standard for the issuance of a preliminary injunction in this circuit is a showing of "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious question going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary injunctive relief." Kaplan v. Board of Education, 759 F.2d 256, 259 (2d Cir.1985). The question before us on review is whether the district court abused its discretion in applying that standard and granting the injunction issued in this case. Mitchell v. Cuomo, 748 F.2d 804, 806 (1984). The registration applicants in this case would certainly suffer irreparable harm if their right to vote were impinged upon. Accordingly, Commissioner D'Apice has not contested the district court's finding of irreparable harm. The injunction was properly issued, therefore, if the district court did not abuse its discretion in finding that appellees satisfy the second part of the preliminary injunction standard.
 
 
 26
 The first paragraph of the injunction prevents the Board from rejecting student applications to register, "on the ground that a campus dormitory cannot be considered a fixed, personal or principal home." Williams v. Salerno, 622 F.Supp. at 1276. To begin with the obvious, it is constitutionally permissible for New York to require that a person be a resident of a place in order to vote there. Dunn v. Blumstein, 405 U.S. 330, 343, 92 S.Ct. 995, 1003, 31 L.Ed.2d 274 (1972). The New York Election Law defines "residence" as "that place where a person maintains a fixed, permanent and principal home and to which he, wherever temporarily located, always intends to return." N.Y.Elec.Law Sec. 1-104(22) (McKinney 1978). That definition is constitutionally permissible so long as the word "he" is read to include both men and women and the word "permanent" is not read in its literal sense. See Auerbach v. Rettaliata, 765 F.2d 350, 351 (2d Cir.1985). The New York Court of Appeals has interpreted the statutory definition of "residence" to approximate the traditional test for domicile. Under that interpretation, the word "permanent" requires only physical presence and an intention to remain for the time at least. See Palla v. Suffolk County Board of Elections, 31 N.Y.2d 36, 37, 47, 286 N.E.2d 247, 251, 341 N.Y.S.2d 860, 866, (1972); see also Auerbach v. Rettaliata, 765 F.2d at 351; Ramey v. Rockefeller, 348 F.Supp. 780, 786 (E.D.N.Y.1972) (three judge district court) (Friendly, C.C.J.).
 
 
 27
 If the state may require that its voters be residents of the relevant political subdivisions, it stands to reason that the state may also take some steps to determine whether registration applicants are in fact residents. Section 5-104 of the New York Election Law establishes the following guidelines for determining who is and who is not a resident:
 
 
 28
 1. For the purpose of registering and voting no person shall be deemed to have gained or lost a residence by reason of his presence or absence while employed in the service of the United States, nor while engaged in the navigation of the waters of this state, or of the United States, or of the high seas; nor while a student of any institution of learning; nor while kept at any welfare institution, asylum or other institution wholly or partly supported at public expense or by charity; nor while confined in any public prison.
 
 
 29
 2. In determining a voter's qualifications to register and vote, the board to which such application is made shall consider, in addition to the applicant's expressed intent, his conduct and all attendant surrounding circumstances relating thereto. The board taking such registration may consider the applicant's financial independence, business pursuits, employment, income sources, residence for income tax purposes, age, marital status, residence of parents, spouse and children, if any, leaseholds, sites of personal and real property owned by the applicant, motor vehicle and other personal property registration, and other such factors that it may reasonably deem necessary to determine the qualification of an applicant to vote in an election district within its jurisdiction. The decision of a board to which such application is made shall be presumptive evidence of a person's residence for voting purposes.
 
 
 30
 N.Y.Elec.Law Sec. 5-104 (McKinney 1978).
 
 
 31
 On its face section 5-104 is a valid, constitutionally permissible attempt to determine a person's proper residence for voting purposes. Auerbach v. Rettaliata, 765 F.2d at 353. The statute does not by its terms raise any presumption for or against student applicants; it merely identifies recognizable categories of persons which are likely to include transients and subjects persons in those categories "to the risk of a more searching inquiry than is applicable to prospective registrants generally." Id. at 354; see also Palla v. Suffolk County Board of Elections, 31 N.Y.2d at 48 & n. 3; 286 N.E.2d at 252 & n. 3; 341 N.Y.S.2d at 867 & n. 3.
 
 
 32
 The equal protection clause of the fourteenth amendment does not, of course, permit a state to discriminate against students by denying them the right to vote or by subjecting them to more vigorous registration requirements than are generally applied. See Auerbach v. Rettaliata, 765 F.2d at 354; Ramey v. Rockefeller, 348 F.Supp. at 786. Section 5-104, however, as interpreted by the New York Court of Appeals, does not so discriminate against students.
 
 
 33
 On its face the statute merely subjects students to the possibility of an additional inquiry in a good faith attempt to determine residency, and does not require students to meet a different standard from any other category of persons seeking to register to vote. The constitutionality of section 5-104 does not, however, guarantee that a local board of elections will not attempt to apply the law in a manner contrary to the dictates of Palla and the United States Constitution. When such a misapplication occurs in the administration of the election law, it is well within the jurisdiction of the federal judiciary to enjoin impermissibly discriminatory practices. Auerbach v. Rettaliata, 765 F.2d at 355.
 
 
 34
 In this case, the Westchester County Board of Elections sent student applicants a letter containing the following two sentences: "Your application for voter registration in Westchester County has been denied as you lack the necessary residential qualifications.... A college dorm cannot be considered a fixed, permanent or principal home." Approximately 100 students received copies of that letter over the signatures of both Commissioner D'Apice and Commissioner Oldi. Approximately 350 additional student applicants received copies of the same letter signed by Commissioner D'Apice only.
 
 
 35
 The letter sent to the student applicants claimed to be in conformity with New York Election Law and the Palla decision. In fact, however, the letter attempted to impose a new requirement for residency contrary to New York law and in violation of the equal protection clause.
 
 
 36
 The interpretation endorsed by the Board's letter creates a per se rule against residence at a student dormitory. Such a rule would stretch the definition of "residence" beyond the constitutional breaking point. New York's requirement that a residence be a "fixed, permanent and principal home," N.Y.Elec.Law Sec. 1-104(22) (McKinney's 1978), means that to be a resident of a place a person must be physically present with the intent to remain for the time at least. Auerbach v. Rettaliata, 765 F.2d at 351. Although students living in dormitories may often lack the intent to remain in the place where they attend school, it is certainly possible for a person to abandon his or her former residence with the intent to remain in the place where he or she attends school. The word "permanent" in Sec. 1-104(22) may not be read in so literal a fashion as to exclude such a person from residency for voting purposes. See id.
 
 
 37
 Not only would the view expressed in the Board's letter create a presumption against student residency, the presumption was apparently intended to be irrebuttable. The letter stated in quite definite terms that "[a] college dorm cannot be considered a fixed, permanent or principal home." Such an irrebuttable presumption would apparently have the effect of completely disenfranchising a person who abandons a former residence in a state other than New York with the intent of becoming a domiciliary of the community in New York where he or she attends school. The Board may not, contrary to the language contained in its letter, create such an irrebuttable presumption against student residency. Auerbach v. Rettaliata, 765 F.2d at 353.
 
 
 38
 This does not mean that the Board may never subject student applicants to an additional level of inquiry as provided for in section 5-104. The Board remains free to take reasonable, good faith steps to determine the true residence of a student applicant. In making that determination, however, the Board may not subject student applicants to a different substantive standard than is applied to other categories of applicants generally. Id. at 353.
 
 
 39
 The first decretal paragraph of the order appealed from in this case requires only that the Board administer the New York Election Law in a manner consistent with Palla, Auerbach, and the United States Constitution. The appellant has, therefore, failed to show that the district court abused its discretion in fashioning that part of the injunction. Furthermore, the district court found that Commissioner D'Apice continues to adhere to the incorrect views on student residency expressed in the Board's earlier letter. There is ample support in the testimony of Commissioner D'Apice to support that conclusion. The injunction was, therefore, necessary to ensure the Board's compliance with the Constitution and New York election law.
 
 
 40
 The second decretal paragraph of the injunction provides that any student who files a timely and complete application must be allowed to register so long as Commissioners Oldi and D'Apice do not agree on how to treat such an application. Under New York law a board of elections is required to accept for registration any application form that contains "substantially all of the required information," N.Y.Elec.Law Sec. 5-210(6)(b) (McKinney 1978), unless the board of elections finds that the applicant is not entitled to register. Id. Sec. 5-210(8). A determination by a board of elections to reject an application requires a majority vote of the commissioners. Id. Sec. 3-212(2).
 
 
 41
 Because there are only two commissioners of the Westchester County Board of Elections, a majority vote must be a unanimous vote. The district court made a factual finding, which we accept, that there is no established Board policy requiring that student applications be rejected. Even if such a policy had existed, it would have been unconstitutional. Under New York law, therefore, the Westchester Board of Elections must accept any substantially complete registration application unless Commissioners Oldi and D'Apice agree to the contrary. Because the second paragraph of the injunction only requires that the Board act in conformity with New York law, the appellant has not shown that the district court abused its discretion in issuing that part of the injunction.
 
 
 42
 The final paragraph of the injunction enjoins the use of any additional questionnaire or form of inquiry not authorized by both Commissioner Oldi and Commissioner D'Apice. It is constitutionally permissible for a board of elections to subject students and other categories of people likely to include transients to an additional level of inquiry pursuant to section 5-104(2). Section 5-104 does not, however, require boards of elections to administer such additional inquiries. The statute merely lists a number of factors which a board "may" consider. In order for a board to initiate an additional form of inquiry, it must affirmatively decide to do so by majority vote of the commissioners. See N.Y.Elec.Law Sec. 3-212(2).
 
 
 43
 In the instant case, Judge Carter found that there is no established board policy of administering an additional form of inquiry to student applicants. There is sufficient evidence to support that finding. An additional inquiry may not, therefore, be administered under New York law until both Commissioners Oldi and D'Apice agree to do so. The final paragraph of the injunction is, therefore, in conformity with New York law and the appellant has not shown that the district court abused its discretion.
 
 
 44
 We note that the testimony given before the district court seems to indicate that Commissioner D'Apice wishes to administer a supplemental inquiry to SUNY-Purchase students living in dormitories but that Commissioner Oldi opposes any inquiry beyond that printed on the standard application form. Although the injunction imposed in this case prevents the Board from automatically rejecting all student applicants, there is no remedy that can force those invested with the public trust to strive to administer their offices in an impartial and equitable manner. It is, of course, deplorable that Commissioners D'Apice and Oldi have constructed an impasse between themselves when they could be working together to agree upon a procedure and form of inquiry which would best protect the fairness and integrity of the election process. We hope that in the future both Commissioners will make a good faith effort to turn their collective energies to the fair administration of the election law and the advancement of the public good.
 
 CONCLUSION
 
 45
 The plaintiffs-appellees have demonstrated that they are likely to suffer irreparable harm if preliminary relief is not granted, and that they are likely to succeed on the merits of the case. Accordingly, the order of the district court is affirmed.