Lisa LEVY, et al., Plaintiffs,

v.

Joseph F. SCRANTON,
et al., Defendants.

No. 88–CV–1103.

United States District Court,
N.D. New York.

Dec. 20, 1991.

New York Civil Liberties Union, New York City, for plaintiffs; Arthur Eisenberg, of counsel.

Harry W. Seibert, Jr., Ballston Spa, N.Y., for defendants.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

## INTRODUCTION

Plaintiffs, Skidmore College students, commenced this suit as a class action in October 1988 by order to show cause seeking a preliminary injunction that would allow them to vote in the November 1988 election. This court granted the relief sought. Now, plaintiffs move for summary judgment pursuant to Fed.R.Civ.P. 56 seeking permanent equitable relief from the Saratoga County Board of Elections' ("Board") policies and procedures with regard to students who attempt to register to vote. In addition, they seek a declaratory judgment that New York Election Law section 5–104(2) was enacted for a constitutionally impermissible purpose.

Moreover, plaintiffs seek an order pursuant to Fed.R.Civ.P. 23 modifying the definition of the class of beneficiaries of the judgment to include "all Skidmore College students who have applied or will apply to register to vote as residents of dormitories or other on-campus housing at the college,"

and an order that this court will retain jurisdiction for a reasonable period of time to monitor defendants' compliance with the equitable relief issued. Finally, plaintiffs seek a grant of attorney's fees pursuant to 42 U.S.C. section 1988. Defendants oppose plaintiffs' motion for summary judgment and in addition cross-move for summary judgment dismissing the complaint.

## BACKGROUND[1]

In late September and early October 1988, approximately 113 students living on the Skidmore College campus applied to register to vote as residents of Saratoga Springs. Each of the students who attempted to register from an on-campus residence received a form letter response from the Board. This letter stated in pertinent part:

> We have received your application for registration by mail, and we do not have your proper home residence address.
>
> If you will contact our office, either by phone or mail, we will be happy to forward the application on to the proper registrar of voters in your county or state.

*See* Plaintiffs' Notice of Motion, Exhibit A.

By order to show cause dated October 27, 1988, plaintiffs moved for preliminary injunctive relief on behalf of the class of plaintiffs comprised of Skidmore College students that had applied to register to vote as residents of Saratoga Springs in the Fall of 1988. On November 2, 1988, this court held a hearing in connection with this motion. At the conclusion of this hearing the court certified this action as a class action and granted plaintiffs the relief requested. *See* This Court's Order entered November 3, 1988. One justification for the court's decision to grant preliminary injunctive relief was the court's belief that "the obvious implication [of this letter] ... is that plaintiff students cannot vote on November 8 [1988] in Saratoga County because they reside in college dormitories." *See* Transcript of November 2, 1988, Hearing at 42.

---

**1.** Unless otherwise stated, these facts are taken from plaintiffs' memorandum of law.

After the court granted this preliminary relief, the parties commenced discovery that included, *inter alia,* a set of depositions taken of the named parties in this action. During this discovery phase, counsel for the parties informally agreed that Skidmore College students living in on-campus housing should be permitted to register to vote as residents of Saratoga Springs if they chose to do so until this court made a final determination on the merits of plaintiffs' claims.

In October 1990, plaintiffs moved for summary judgment. In response, defendants cross-moved for summary judgment. Defendants argued that their conduct was authorized by New York Election Law sections 1–104(22) and 5–104(2) which the Second Circuit had previously upheld as constitutionally valid. *See Auerbach v. Rettaliata,* 765 F.2d 350 (2d Cir.1985).

In part because of defendants' reliance on these statutory provisions, plaintiffs requested a conference with this court to discuss whether the court would consider re-examining the constitutionality of these provisions notwithstanding the Second Circuit's decision in *Auerbach.* At a conference held in December 1990, plaintiffs' counsel argued that *Auerbach* had not addressed the claim that section 5–104(2) had been enacted for the constitutionally impermissible purpose of "fencing out" students from the franchise for fear of the way they might vote. Plaintiffs' counsel further argued that the statute should be invalidated on this ground. Plaintiffs' counsel requested that both plaintiffs' and defendants' motions for summary judgment be stayed to permit plaintiffs to move to amend their complaint to raise the claim that section 5–104(2) had been enacted for a constitutionally impermissible purpose and was therefore invalid. This court granted plaintiffs' request. As a result of this decision, in March 1991 plaintiffs moved for leave to amend their complaint raising a constitutional challenge to the validity of the 1971 amendments to the New York Election Law as they related to the issue of student voting. This court granted plaintiffs' motion to amend their complaint in April 1991. Plaintiffs now renew their motion for summary judgment. Defendants maintain their opposition to this motion for summary judgment and in addition renew their cross-motion for summary judgment.

## DISCUSSION

Summary judgment is appropriate when the court is convinced that there are no genuine issues of material fact and the movants are entitled to judgment as a matter of law. *See Passo. v. United States Postal Serv.,* 631 F.Supp. 1017, 1022 (S.D.N.Y.1986). The mere existence of some alleged factual dispute, however, will not defeat such a motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986). Rather, Rule 56 of the Federal Rules of Civil Procedure requires that there be no *genuine* issue of *material* fact. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211 (emphasis in the original). The substantive law underlying the cause of action will identify which facts are material; i.e., facts that might affect the outcome of the suit under the governing law. *Id.* Nevertheless, it should be remembered that materiality is only a criterion for categorizing factual disputes in relation to the legal elements of the claim and is not a criterion for evaluating the evidence underlying the disputes. *Id.*

Moreover, if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving parties then summary judgment is not appropriate. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211–12; *see also General Electric Co. v. New York Dep't of Labor,* 936 F.2d 1448, 1452 (2d Cir.1991). In deciding whether to grant summary judgment, the court's function is to determine whether there is a genuine issue for trial not to weigh the evidence and determine the truth of the matter. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511, 91 L.Ed.2d at 212. Accordingly, the court must leave credibility determinations, weighing of evidence and drawing of legitimate inferences from the facts to the jury.

*Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216. Furthermore, in making its determination, the court must believe the non-movants' evidence and must draw all justiciable inferences in their favor. *Id.* This does not mean, however, that the non-movants may rest on mere allegations or the denials of their pleadings. Rather, they must present affirmative evidence from which a jury *might* return a verdict in their favor. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514, 91 L.Ed.2d at 217 (emphasis added). However, although they are expected to set forth specific facts showing that there is a genuine issue for trial, such evidence need not *ensure* that the jury will return a verdict in their favor. *See Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514, 91 L.Ed.2d at 217.

### A. Constitutionality of New York Election Law § 5-104(2)

Plaintiffs seek a declaratory judgment that New York Election Law section 5-104(2) was enacted for the constitutionally impermissible purpose of fencing out students from the franchise and as such should be declared invalid. In *Carrington v. Rash*, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965), the Supreme Court reviewed the constitutionality of a Texas statute that prohibited military personnel from voting as residents of Texas if they moved into the state during the course of their military duty. In defense of its position, Texas argued that the statute was necessary "to prevent the danger of a 'takeover' of the civilian community resulting from concentrated voting by large numbers of military personnel in bases placed near Texas towns and cities." *Carrington*, 380 U.S. at 93, 85 S.Ct. at 778, 13 L.Ed.2d at 679. Rejecting this justification, the Court held that the statute·was unconstitutional because " '[f]encing out' from the franchise a sector of the population because of the way they may vote is constitutionally impermissible." *Carrington*, 380 U.S. at 94, 85 S.Ct. at 779, 13 L.Ed.2d at 679; *see also Evans v. Cornman*, 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970); *Symm v. United States*, 439 U.S. 1105, 99 S.Ct. 1006, 59 L.Ed.2d 66 (1979) (summarily affirming the decision of a statutory three-judge district court in *United States v. State of Texas*, 445 F.Supp. 1245 (S.D.Tex.1978)).

Plaintiffs argue that based on the *Carrington* decision and its progeny, the court should find section 5-104(2) unconstitutional because it was enacted for the very same purpose as the statute in *Carrington*—to fence out a sector of the population (in this case, students) from the franchise for fear of the way they might vote. In support of their contention, plaintiffs submitted the transcripts of the legislative debate on the floor of the New York State Assembly on the Biondo Bill (amendments to section 151 of the Election Law) which took place on May 12, 1971. The discussion on the floor of the Assembly concerned, among other things, the problem of communities in which the student population, if allowed to vote, could have a significant impact on the outcome of local elections, especially in those small communities in which the students outnumbered the local non-academic population. Assemblymen were concerned that if this bill did not pass, students, who came to these communities solely for the purpose of attending school, in some instances could determine the outcome of school budgets, long term bond issues, and the election of public officials. *See* Plaintiffs' Revised Notice of Motion, Exhibit C.

■ Defendants do not challenge the authenticity of these transcripts but rather argue that the court should not consider them on a motion for summary judgment because they are unsworn. *See* Defendants' Reply Memorandum at 3. In addition, defendants argue that the "remarks of a handful of members of the New York Legislature during political debate is not evidence. Such remarks are unsworn and can hardly be described as the belief of all members of the body voting for the proposed legislation." *See* Defendants' Reply Memorandum at 3. Where, as here, there is no dispute as to the authenticity of the documents, the court may take judicial notice of such legislative history in determining a motion for summary judgment. *See Stasiukevich v. Nicolls*, 168 F.2d 474 (1st

Cir.1948); *Brennan v. Udall,* 251 F.Supp. 12, (D.C.Colo.1966) *aff'd,* 379 F.2d 803 (10th Cir.), *cert. denied,* 389 U.S. 975, 88 S.Ct. 477, 19 L.Ed.2d 468 (1967); *see also Oneida Indian Nation of New York v. State of New York,* 691 F.2d 1070 (2d Cir.1982), *cert. denied,* 493 U.S. 871, 110 S.Ct. 200, 107 L.Ed.2d 154 (1989). Accordingly, the court will take judicial notice of these transcripts and will consider them in making its determination of this motion.

In *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450, 464 (1977), the Supreme Court held that proof of discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. The Court went on to say that "in determining whether an inviduously discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.* at 266, 97 S.Ct. at 564, 50 L.Ed.2d at 465. Factors relevant to a determination of discriminatory intent include "(1) the degree of any discriminatory effect of the action, (2) its historical background, (3) the sequence of events that led to the action, (4) the presence or absence of departures from normal procedures or substantive criteria, and (5) the legislative or administrative history of the action." *Southside Fair Hous. Comm. v. City of New York,* 928 F.2d 1336, 1352 (2d Cir.1991) (citing *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)).

■ In this instance, plaintiffs have done a commendable job of analyzing these factors for the court. Defendants, on the other hand, have done no more than ask the court to accept their contrary interpretation of the New York Assembly and Senate debates. Such bald assertions and conclusory denials, without more, normally would not be sufficient to withstand a motion for summary judgment. *See Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514, 91 L.Ed.2d at 217. However, where the court, as here, is asked to look at the motive of the legislature for enacting legis-

lation, the court must be ever vigilant to undertake such a review with care and with proper deference for the legislature's role in our system of checks and balances.

■ With this in mind, the court has carefully reviewed both the Assembly and Senate debates on the Biondo Bill as well as the other criteria relevant to a determination of discriminatory motive. As plaintiffs suggest there is some indication, especially given the timing of this bill in relation to the passage of the Twenty-sixth Amendment and the primary focus of the legislative debates with their strong emphasis on the student population, that the subjective intent of some legislators was constitutionally impermissible. This fact, however, does not lead to the inevitable conclusion that this subjective intent was a motivating factor on the part of the entire legislature to enact this bill. This is especially true where, as here, the transcripts demonstrate that other legislators had permissible motives for supporting this legislation. For example, the bill's sponsor, Mr. Biondo, said that his bill did not change the existing law but that in effect the bill stated that the "fact that [a student] is attending a university is not to be considered in determining [the student's] residency for voting purposes." *See* Assembly Debates at 3–3. Mr. Biondo went on to say that "the main purpose of this [bill] ... is to establish some guidelines for the local administrative bodies who have the responsibility of making the initial decision as to whether a student can register to vote and also to give some guidelines to the courts, ... I think it also gives some help to the person who wants to register to know in advance what kind of information he is supposed to give to the local registration board, when he goes down there to attempt to register." *Id.* at 3–6.

A purpose, such as the one that Mr. Biondo articulated, is not constitutionally impermissible. In fact, both the Supreme Court and the Second Circuit have held that the states may establish criteria for determining the residency of people wishing to vote in a community. *See Evans v. Cornman,* 398 U.S. 419, 90 S.Ct. 1752, 26

L.Ed.2d 370 (1970); *Williams v. Salerno*, 792 F.2d 323 (2d Cir.1986). Nor is this bill like the statute discussed in *Carrington* that, by its very terms, disenfranchised a particular group of individuals living within the state's borders. *Carrington v. Rash*, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965); *see also Evans v. Cornman*, 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970). Section 5–104(2) is neutral on its face. Moreover, as construed by the New York Court of Appeals, the statute identifies criteria that may demonstrate conduct bespeaking an intention to reside at a particular place. *See Auerbach*, 765 F.2d at 353. As the Second Circuit has said "[r]equiring groups likely to include transients to show something in addition to physical presence in a community in order to meet a neutral test of residence for purposes of voting comports with the element of 'necessity' in 'strict scrutiny' test." *Auerbach*, 765 F.2d at 355.

Admittedly, this bill establishes criteria to determine bona fide residence; and students, as well as other transient groups, are undoubtedly affected by such legislation. This fact alone, however, does not make its purpose constitutionally impermissible. Accordingly, because section 5–104(2) was enacted, at least in part, for the constitutionally permissible purpose of providing guidelines for determining bona fide residency, the court denies plaintiffs' request for a declaratory judgment to invalidate this provision on the ground that it was enacted for the constitutionally impermissible purpose of fencing students out of the franchise.

### B. Policies and Practices of Saratoga County Board of Elections

■ In the present case, plaintiffs seek summary judgment on two issues concerning the Board's policies and procedures. First, plaintiffs contend that the Board disqualified Skidmore students from voting because the Board's Commissioners took the position that an on-campus residence could not constitute a "permanent" residence within the meaning of the New York Election Law. *See* Eisenberg Affidavit of October 5, 1990, Exhibit A. Section 1–104(22) provides that "[t]he term 'residence' shall be deemed to mean that place where a person maintains a fixed, permanent and principal home and to which he, wherever temporarily located, always intends to return." N.Y.Elec. Law § 1–104(22) (McKinney 1978). Certainly, this language could be construed in such a way to make it impossible for a dormitory room that must be vacated at the end of each academic year to meet the requirement for permanency.

Several courts in this circuit, and the Court of Appeals itself, have recognized that such a literal reading of this definition would be an unfair and unconstitutional interpretation of the word "residency." Therefore, these courts have given section 1–104(22) a much broader construction enabling them to save the statute from constitutional invalidity. In *Ramey v. Rockefeller*, 348 F.Supp. 780 (E.D.N.Y.1972), Judge Friendly examined New York's statutory definition of residency and stated that:

> [t]he only constitutionally permissible test [for residency] is one which focuses on the individual's *present intention* and does not require him to pledge allegiance for an indefinite future. The objective is to determine the place which is the *center* of the individual's life *now*, the *locus of his primary concern.*

*Id.* at 788 (emphasis added).

Likewise this court has interpreted section 1–104(22) in a constitutionally permissible way. In *Auerbach*, students attending the State University of New York at Albany sought to register as residents of Albany County. The county took the position that pursuant to the New York Election Law students could not acquire a voting residence in their college community. Therefore, the commissioners told the students that the commissioners "d[id] not consider dormitories to be 'legal residences' for voting purposes." *Auerbach v. Kinley*, 499 F.Supp. 1329, 1333 (N.D.N.Y.1980). In its decision, the court stated that "the word 'permanent' as used in the statute is not meant to be taken literally, but rather, is intended to approximate the test for

domicile, i.e., physical presence and an intention to remain for the time at least." *Id.* Although the Second Circuit remanded this case on other grounds, it affirmed this aspect of this court's decision.

Finally, in *Williams v. Salerno*, 792 F.2d 323 (2d Cir.1986), the Second Circuit addressed this issue. *Williams* involved approximately 450 students living on the campus of the State University of New York at Purchase who attempted to register to vote as residents of Purchase, New York in Westchester County. Upon receiving the students' registration forms, the Board sent each student a form letter that stated that "[a] college dorm cannot be considered a fixed, permanent or principal home." *Id.* at 325. At the district court level, Judge Carter held that the Board had applied the Election Law unconstitutionally when it denied the franchise to these students. As a result, Judge Carter issued injunctive relief mandating that the students be permitted to vote as residents of their on-campus facilities. Thereafter, one of the Election officials moved to vacate this injunction. This motion was denied. On appeal, the Second Circuit affirmed Judge Carter's decision and observed:

> New York's requirement that a residence be a "fixed, permanent and principal home," N.Y.Elec. Law Section 1–104(22) (McKinney's 1978), means that to be a resident of a place a person must be physically present with the intent to remain for the time at least. *Auerbach v. Rettaliata*, 765 F.2d at 351.

*Id.* at 328.

As these cases indicate it is impermissible for the Board to read section 1–104(22)'s definition of "residence" so narrowly that it automatically disenfranchises students who live in on-campus residences. Instead a constitutionally permissible reading of the statute requires that the Board determine whether the student, or any other voter, is both physically present in the county and intends to remain there for the time.

Second, plaintiffs contend that the Board has misapplied section 5–104(2) in determining whether the students were qualified to register and vote in Saratoga Springs. Pursuant to New York Election Law section 5–104(2)

> [i]n determining a voter's qualification to register and vote, the board to which such application is made *shall* consider, in addition to the applicant's expressed intent, his conduct and all attendant surrounding circumstances relating thereto. The board taking such registration *may* consider the applicant's financial independence, business pursuits, employment, income sources, residence for income tax purposes, age, marital status, residence of parents, spouse and children, if any, leaseholds, sites of personal and real property owned by the applicant, motor vehicle and other personal property registration, and other such factors that it may reasonably deem necessary to determine the qualification of an applicant to vote in an election district within its jurisdiction. . . .

N.Y.Elec. Law § 5–104(2) (McKinney 1978).

Although plaintiffs concede that the Second Circuit has held that section 5–104(2) is constitutional on its face, they argue that in this case the Board misapplied the statute. It is undisputed that states "have long been held to have broad powers to determine the conditions under which the right of suffrage may be exercised." *Evans v. Cornman*, 398 U.S. 419, 422, 90 S.Ct. 1752, 1755, 26 L.Ed.2d 370, 374 (1970) (quoting *Lassiter v. Northampton Election Bd.*, 360 U.S. 45, 50, 79 S.Ct. 985, 989, 3 L.Ed.2d 1072, 1076 (1959)). Moreover, the Second Circuit has held that it is constitutionally permissible for New York to require that a person be a resident of a place in order to vote there. *Williams*, 792 F.2d at 327 (citing *Dunn v. Blumstein*, 405 U.S. 330, 343, 92 S.Ct. 995, 1003, 31 L.Ed.2d 274, 285 (1972)). To this end, the Second Circuit in *Auerbach* stated that the criteria set forth in section 5–104(2) permissibly aided the state in "ferreting out those whose claimed residence is not bona fide." *Auerbach*, 765 F.2d at 355 (quoting *Palla v. Suffolk County Bd. of Elections*, 31 N.Y.2d 36, 50, 334 N.Y.S.2d 860, 869, 286 N.E.2d 247, 253 (1972)). Nonetheless, the

court went on to say that "if in the course of administering section 5–104, election officials engage in discrimination against students that transgresses constitutional standards, the courts are not powerless to provide appropriate relief." *Id.*

Section 5–104(2), by its own terms, requires that the Board consider "in addition to the applicant's expressed intent, his conduct and all attendant surrounding circumstances relating thereto ..." N.Y.Elec. Law § 5–104(2) (McKinney 1978). Here, the Board made no inquiry into either the students' intent or their conduct or contacts with Saratoga Springs.[2] It simply sent them a form letter which stated that the students had not provided the Board with a proper home address. As this court stated at the conclusion of the hearing on plaintiffs' motion for preliminary injunction, the letter sent to these students "appears to be creating 'a per se rule against the residence at a student dormitory;' and such an interpretation of an Election Law residency requirement cannot stand in light of the Second Circuit's decision in *Williams.*" *See* Transcript of November 2, 1988, Hearing at 42.

Defendants have offered no evidence in opposition to plaintiffs' motion for summary judgment to demonstrate that the Board employed any criteria other than the residence of the students to determine that they were ineligible to vote. In fact, quite the opposite is true. For example, when asked if the Board had a questionnaire to determine the community in which voters should be registered to vote, Ms. DelVecchio, one of the Board's Commissioners, responded yes. *See* DelVecchio Affidavit at 39. However, when asked if the questionnaire had been given to any individual whose residency she questioned, Ms. DelVecchio answered that she had never had the occasion to use it. *See* DelVecchio Affidavit at 40.

On the other hand, in an attempt to create an issue of fact defendants allege that plaintiffs' deposition testimony proves that they do not meet the residency requirements of New York Election Law section 5–104. *See* Defendants' Memorandum of Law at 18. Undeniably this deposition testimony raises an issue of fact, however, it is not a *material* fact that would preclude this court from granting plaintiffs' motion for summary judgment on the issue of the Board's policies and procedures. Rather, the material fact in this instance is whether or not the Board inquired into these section 5–104 criteria when it refused to register the students to vote. In light of the fact that defendants have offered no evidence to counter plaintiffs' allegations that the Board failed to make the inquiry required by section 5–104(2), the court concludes that plaintiffs are entitled to summary judgment on the issues surrounding the Board's summary denial of the students' applications for voter registration. Accordingly, the court grants plaintiffs' requests for permanent injunctive and declaratory relief as they pertain to these policies and procedures.

## C. Attorney's Fees Pursuant to 42 U.S.C. § 1988

Plaintiffs request that the court award them attorney's fees pursuant to 42 U.S.C. section 1988. Defendants have not opposed this request. In order to justify an award of attorney's fees, a party must be a prevailing party within the meaning of the statute. To be considered a prevailing party, a party must show a causal connection between the relief obtained and the litigation in which the fees are sought. *Gerena–Valentin v. Koch*, 739 F.2d 755 (2d Cir.1984). Such a causal connection exists if the party's lawsuit was "a catalytic, necessary, or substantial factor in attaining the relief." *Id.* at 758–59 (citations omitted). The inquiry into causality is largely factual and a district court's findings on these matters will be set aside only if they are clearly erroneous. *Id.* at 759

---

**2.** Only after plaintiff, Levy, called the Board to question its refusal to register her, was she asked any questions. At that point, the Board asked her only two questions—did she have a driver's license and where did her parents re-

side. After Levy stated that she did not have a license and that her parents had recently moved to Illinois, the Board told her that she should vote where her parents resided even though she had never been there.

(citations omitted). Finally, even if a party achieves only partial success, he may be considered a prevailing party where he " 'succeed[s] on any significant issue in litigation which achieves some of the benefit ... sought in bringing suit.' " *Fassett v. Haeckel*, 936 F.2d 118, 122 (2d Cir.1991) (quoting *Hensley v. Eckerhart*, 461 · U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40, 50 (1983) (citation omitted)).

■ In this case, plaintiffs have succeeded in obtaining summary judgment and therefore permanent injunctive and declaratory relief on all but one issue—that involving the constitutional validity of New York Election Law section 5–104(2). Without this litigation, they would never have received such relief. Therefore, the court finds that plaintiffs are prevailing parties within the meaning of the statute. Accordingly, the court grants plaintiffs' request for attorney's fees and costs incurred in pursuing this litigation. In this regard, the court directs plaintiffs to provide the court with the appropriate documentation indicating the hours and costs for which they seek this award.

*D. Redefinition of Class Pursuant to Fed.R.Civ.P. 23*

■ Plaintiffs request an order to modify the definition of the class of beneficiaries of this judgment. Defendants do not oppose this request. The court has the power to alter the class description if events subsequent to the original certification suggest that it is appropriate to do so. *See Fox v. Prudent Resources Trust*, 69 F.R.D. 74 (E.D.Penn.1975).

In this case, plaintiffs have sought, and this court has granted, permanent injunctive and declaratory relief, much of which is prospective in nature. At least some, if not all, of the named plaintiffs have graduated from Skidmore College and have moved out of their on-campus housing. Therefore, these students are no longer able to adequately represent the interests of those students still domiciled on campus. Yet the issue of a student's residency for purposes of voter registration will continue to surface annually as election day ap-

proaches. Accordingly, in order that those Skidmore College students who still live in on-campus housing and who desire to register and vote as residents of Saratoga County may continue to be adequately represented, the court grants plaintiffs' request to modify the definition of the class of beneficiaries of this judgment to include "all Skidmore College students who have applied or will apply to register to vote as residents of dormitories or other on-campus housing at the college."

### CONCLUSION

Having determined that plaintiffs have not met their burden of proof to demonstrate that New York Election Law section 5–104(2) was enacted for a constitutionally impermissible purpose, the court denies their request for a declaratory judgment that this statute is constitutionally invalid.

On the other hand, the court concludes that plaintiffs are entitled to summary judgment concerning the Board's policies and procedures which denied plaintiffs their right to vote on the sole basis that they were students who lived in on-campus housing. Accordingly, the court awards plaintiffs the following declaratory and injunctive relief:

(1) a declaration that the policies and practices of the Saratoga County Board of Elections which denied Skidmore College students the right to vote solely because they lived in on-campus housing represents an unconstitutional denial of their right to vote;

(2) a permanent injunction barring the Board from disqualifying college students from registering to vote as residents of Saratoga County merely because they are students living in on-campus housing;

(3) a permanent injunction barring the Board from requiring college students seeking to register and vote to manifest an intention to remain "permanently or indefinitely" in Saratoga County;

(4) declaratory judgment that the Board must permit students, who meet the test for bona fide residence as defined by the criteria set forth in New York Election

Law section 5–104(2), to vote in Saratoga County

In this regard, the court grants plaintiffs' request that the court retain jurisdiction over this matter for a reasonable time to monitor defendants' compliance with this relief.

In addition, the court grants plaintiffs' request for an order pursuant to Fed. R.Civ.P. 23 to modify the definition of the class of beneficiaries of this judgment to include "all Skidmore College students who have applied or will apply to register to vote as residents of dormitories or other on-campus housing at the college." More-over, because the court finds that plaintiffs are prevailing parties in this lawsuit, the court grants plaintiffs' request for an award of attorney's fees pursuant to 42 U.S.C. section 1988. In this regard, the court directs plaintiffs to submit documentation detailing the hours and costs for which they seek this award. Finally, the court denies defendants' cross-motion for summary judgment.

IT IS SO ORDERED.