COMMONWEALTH EDISON
COMPANY, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 97–269C.

United States Court of Federal Claims.

Feb. 28, 2000.

Robert A. Mangrum, Winston & Strawn, Washington, DC, attorney of record for plaintiff.

Theodore R. Carter III, U.S. Department of Justice, Washington, DC, with whom was Acting Assistant Attorney General David W. Ogden, for defendant.

## ORDER

ALLEGRA, Judge.

On February 25, 2000, plaintiff filed a Motion for Reconsideration, requesting this court to reconsider its decision of February 3, 2000, wherein this court granted defendant's motion to dismiss. In general, the memorandum in support of this motion misinterprets and mischaracterizes this court's opinion. It repeatedly targets two statements that plaintiff claims this court adopted inconsistent with the allegations in its complaint.

Plaintiff first takes issue with this court's statement that "it is important that the need for decommissioning and decontamination was *not* fully recognized until near the time the Energy Policy Act was enacted." *Commonwealth Edison Co. v. United States,* 46 Fed.Cl. 29, at 44 (2000). In its memorandum, plaintiff recharacterizes (rewrites) this statement as indicating that the government was "unaware" of the need for decommissioning and decontamination until "almost 1992" or "approximately 1992." This is clearly not what this court stated, as evidenced by its use of the qualifying term "fully recognized" (rather than, as plaintiff states, "unaware") and by the statement earlier in the opinion that: *"[i]n the late 1980s,* Congress recognized that the government's uranium enrichment facilities would have to be decontaminated and decommissioned." *Id.* at 32 (emphasis added). The statements actually made by this court are fully consistent *not only* with the legislative history of the Energy Policy Act,[1] but also with the summary of that history contained in the Federal Circuit's opinion in *Yankee Atomic Electric Co. v. United States,* 112 F.3d 1569, 1576 (Fed.Cir.1997), *cert. denied,* 524 U.S. 951, 118 S.Ct. 2365, 141 L.Ed.2d 735 (1998).

At all events, plaintiff overlooks the fact that the statement upon which it focuses is ancillary to the main reason why this court rejected plaintiff's due process argument. The opinion makes clear that no due process violation occurred here because it was ration-

---

1. *See, e.g.,* H.R.Rep. No. 102–474, at 77 (1992), *reprinted in* 1992 U.S.C.C.A.N. 2282, 2295, referring to a "[c]urrent estimates prepared by [Department of Energy] contractors" that indicated that "the total costs of cleanup could exceed $20 billion over 40 years." *See also* the legislative history quoted in footnote 2, *infra.*

al for the Congress to impose a portion of the cost of decommissioning and decontamination on the companies that had benefited from the uranium enrichment services and to measure those benefits by looking retroactively to determine the number of enriched uranium units ultimately used by particular utilities. *See Commonwealth Edison,* at 44–45. The time that the final dollar figure for decommissioning and decontamination was finally ascertained is largely, if not entirely, irrelevant to this analysis.

■ The second statement that plaintiff contests as being inconsistent with its complaint is the court's determination that the utilities benefited from the uranium enrichment services. This determination, again, was based upon legislative history—specifically, the detailed statement of Representative Philip R. Sharp, the House floor manager of the bill [2]—which, contrary to plaintiff's claim, this court appropriately considered in the context of a motion to dismiss. *See id.* at 44–45. Moreover, in characterizing this floor statement as isolated, plaintiff turns a blind eye to that part of the Conference Committee Report on the bill that similarly states: "[t]he prevailing view on the allocation of costs of cleaning up these plants is that it should be based on *benefits received from the program,* namely in proportion to purchases of enrichment services." H.R.Rep. No. 102–

---

2. In this regard, Mr. Sharp stated:

The terms of the cost recovery requirement [of section 161v. of the Atomic Energy Act] were in fact very favorable to commercial customers. Although the Government was required to fully recover its costs, it could not charge a price higher than costs. Therefore, for many years when the utilities would have had to pay a higher market price to obtain these services from other sources, the Government was restrained by this provision to charge a lower price set at costs.

Furthermore, by getting use of these plants in return for paying a proportional share of fixed costs, utilities were able to avoid the even greater costs of building a plant of their own and paying for all of the original plant investment and eventual clean-up costs. In this way, the overall terms of cost-recovery under 161v. were meant to balance the interests of the commercial customers and the taxpayers.

However, in practice the cost recovery requirements of 161v. have not worked very well. Because of unproductive investments and a failure to adequately account for cleanup costs,

---

474, at 77, 1992 U.S.C.C.A.N. 2282, 2295 (emphasis added). Contrary to plaintiff's claim, this court is not required to ignore this legislative history in determining whether Congress acted rationally in passing the special assessment simply because plaintiff alleges to the contrary in its complaint.[3]

Based on the foregoing, as well as the court's review of the other grounds for reconsideration contained in plaintiff's motion and accompanying memorandum,

IT IS ORDERED:

The Motion for Reconsideration is **DENIED**.

---

the program ended up charging prices that were not only below market, but also below costs.

Senate Comm. on Energy and Natural Resources, 103d Cong., 2d Sess., *Legislative History of the Energy Policy Act of 1992,* Vol. 6, at 4553–54 (Comm. Print 1994) (Statement of Rep. Philip R. Sharp).

3. Contrary to plaintiff's claim, it is well-established that a court need not accept as true allegations contained in a complaint that are contradicted by matters on which the court may take judicial notice, such as legislative facts embodied in legislative history. *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1363, at 464–65 (2d ed.1990) (citing cases). Plaintiff also is flatly wrong in arguing that judicial notice of such legislative facts is precluded by Federal Rule of Evidence 201, which instead deals only with adjudicative facts. *See, e.g., FDIC v. Jackson-Shaw Partners No. 46, Ltd. et al.,* 1994 WL 665262 at *9 n. 4 (N.D.Cal. 1994); *Levy v. Scranton,* 780 F.Supp. 897, 900–01 (N.D.N.Y.1991).